## Ahrens *v.* Goldstein, Appellant.

Argued October 14, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

116

*Louis Vaira,* with him *Rynd & Olmes* and *George S. Goldstein,* for appellants.

*E. C. Breene,* with him *Breene, Brewster & Breene* and *McGill & McGill,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, January 4, 1954:

This appeal is from the refusal of the court below to open a judgment entered against the appellants in an amicable action of ejectment upon a warrant of attorney contained in an oil and gas lease.

On December 19, 1949, the Continental Oil Company of Philadelphia conveyed certain premises in President Township, Venango County, known as the Continental Farm, to Julius Ahrens and Bessie Ahrens, his wife, the appellees, by a deed which was recorded on December 29, 1949. The conveyance was made subject to a certain oil and gas lease for twenty years, executed by the appellees' grantor to one Jacob Goldstein, father of two of the appellants, dated October 17, 1916. At the time of the aforesaid conveyance, these appellants George Goldstein and his sister, Lillian Goldstein, were operating the premises, which contained some twenty-seven oil wells, two pressure wells and two power wells, for the production of oil and gas.

George Goldstein and his sister Lillian and one Thomas V. Penner, the other appellant, on November 1, 1943 had been granted by the Continental Oil Company for the term of twenty years the exclusive right

and privilege of mining and drilling for carbon oil and petroleum on the entire tract. This lease was not recorded until April 16, 1951. It contained, inter alia, an agreement on the part of the lessees to maintain constant operations for the production of oil from the premises during the continuance of the lease, with a provision that a suspension of such operations for the space of thirty days at any one time without the consent in writing of the landowners should be deemed an abandonment of the premises and the relinquishment and forfeiture of all the rights and privileges granted in the lease. Time was made of the essence.

It further provided that if the lessees should fail for a space of thirty days at any one time in the due performance of any one of the covenants and agreements that, then, and in either such case of failure or breach, the lease and all rights and privileges should immediately terminate and become null and void.

The lease also provided that in order that the lessors could obtain prompt possession of the premises in the event of default, the lessees authorized and empowered any attorney of any court of record as attorney for the lessees, to enter in any competent court an amicable action and judgment in ejectment against the lessees and all persons claiming under them for the recovery of the possession demised.

The lease was operated and royalties paid to the appellees until November, 1950. On November 23, 1950, there was an unusually heavy fall of snow in President Township and most sections of western Pennsylvania, and from that date until the present time the defendants have not operated for oil under the lease. Several letters were sent by counsel for the appellees to George Goldstein between November 28, 1950 and June 26, 1951 wherein the appellees claimed exclusive possession, at first on the ground that the

lease of October 17, 1916 had expired [1] and later on the ground of abandonment and forfeiture for failure to operate for thirty days under the terms of the lease of November 1, 1943.

Subsequent to a letter written by appellees' counsel to the appellant George Goldstein dated January 5, 1951, the appellees posted "No Trespassing" signs on the property, constructed a 33 foot wide road about 4700 feet in length over the southerly portion of the land, laid out a plan of 100 lots on the property along the line of the road and also granted a right of way for the erection and maintenance of an electric line to the Pennsylvania Electric Company.

On July 17, 1951 the appellants instituted an action in equity to restrain the appellees from interfering with their operation of the lease for oil and gas and also to restrain the appellees from conveying the surface of the premises covered by the lease. The appellees filed an answer raising preliminary objections to the bill. On October 11, 1951 the court issued an order dismissing all of the preliminary objections with the exception of the first, holding that the appellees had the right to sell, convey and dispose of all the property or any part thereof as contended in such objection.

The appellants petitioned for a reargument on the first preliminary objection, which had been sustained by the court. Upon reargument on January 17, 1952 the court reinstated its disposition of the appellees' preliminary objections under the original order and

---

[1] The appellees were not aware of the existence of the unrecorded lease of November 1, 1943 until sometime in March of 1951 and therefore they at first claimed possession because of the expiration of the earlier lease. Appellants never notified the appellees of the later lease, despite the appellees' letters demanding their removal from the premises.

granted the appellee twenty days to file an answer to the appellants' bill of complaint. Between the time of the petition for reargument and the court's disposition thereof, the appellees on November 28, 1951 caused judgment in ejectment to be confessed against the appellants on the ground that they breached the covenants in the lease by their failure to maintain continuous operation for more than thirty days at one time without the consent in writing of the lessors.

A petition to open the judgment was filed by the appellants in the ejectment suit on January 3, 1952. A rule was granted upon the appellees to show cause why the judgment should not be opened, and depositions pursuant thereto were taken. After hearing and argument on the petition, the answer thereto, and the depositions, the court found from the facts that the lessees had not operated the premises from November 22, 1950 and that the failure so to do was not caused by any acts on the part of the lessors. The court thereupon on February 18, 1953 rendered an order discharging the rule. From the refusal to open the judgment the appellants take the present appeal.

When an appeal is taken from an order refusing to open a judgment, the only question before the appellate court is whether, in view of all the evidence, the action of the court below constituted an abuse of discretion. See *Tremont Township School District v. Western Anthracite Coal Company*, 364 Pa. 591, 599, 73 A. 2d 670; *Keystone Bank of Spangler v. Booth*, 334 Pa. 545, 550, 6 A. 2d 417.

The appellants, in support of the prayer and averments in their petition to open the judgment contended that the laying out of the plan of lots, the construction of a road near their wells and the granting of a right of way amounted to an eviction by the lessors, thereby estopping them from declaring a forfeiture.

The appellant, George Goldstein, and his only other witness, Harry Freeman, asserted in their depositions that the posting of "No Trespassing" signs around January 15, 1951 and certain alleged threats of arrest prevented them from drilling on the tract. Their only excuse for failing to operate from November 23, 1950 until January 15, 1951 was the heavy snow storm that blanketed the area on November 23, 1950. They offered no testimony that would tend to show any efforts on their behalf to repair damage done by the storm and put the equipment in working condition.

The appellee, Julius Ahrens, on the other hand by answer to the rule and in his deposition averred that although he was aware of the appellants' activities on the property when the land was conveyed to him and prior to that time, nevertheless, he was under the impression that they were conducting their operations under the lease that expired October 17, 1936 as tenants at will. He alleged that despite letters by the appellees' counsel to the appellants apprising them of their position regarding this matter, the appellants did not notify the appellees of the 1943 lease until sometime in March, 1951.

The depositions of appellees' other witnesses, men long experienced in the operation of oil leases, disclosed that pumping could have been resumed not later than three or four days after the storm if the appellants wanted to go to the trouble of digging and thawing out the rod lines. One of these witnesses, Harold Gates, testified that oil leases in the nearby vicinity were being operated from two to four days following the storm.

There were numerous conflicts throughout the testimony adduced on behalf of appellants and the appellees. We held in *Stoner v. Sley System Garages*, 353 Pa. 532, 535, 46 A. 2d 172, that, ". . . An oath

against an oath or a mere conflict of evidence do not warrant the submission of the issue to a jury.". The burden was on the appellants to produce such evidence as would persuade the court that, upon submission of the issue to a jury, a verdict in their favor could be upheld: *Schuylkill Trust Company et al. v. Sobolewski et ux.,* 325 Pa. 422, 190 A. 919. The learned trial judge here was apparently not so persuaded. An independent reading of the depositions on our part convinces us that the appellants did not meet the burden placed upon them. The evidence was not sufficient to warrant a holding by this Court that the court below was guilty of an abuse of discretion in refusing to open the judgment.

It is urged by the appellants that the trial judge improperly relied on a ruling in the equity case as being res adjudicata in arriving at his conclusion in the ejectment proceeding. Our decisions leave no doubt that a decree which sustains a preliminary objection without dismissing the bill is interlocutory: *Armstrong et al. v. Espy et al.,* 220 Pa. 48, 69 A. 69; *Smith v. Philadelphia & Reading Ry.,* 286 Pa. 55, 132 A. 804; and as a result the doctrine of res adjudicata is not applicable: *O'Brien et al. v. O'Brien,* 362 Pa. 66, 73, 66 A. 2d 309. However, even though the trial judge referred to a ruling in the equity case as res adjudicata, it is obvious from an examination of the entire opinion that he did not base his decision on this ground. It was merely an additional reason, wholly unnecessary to the disposition of the case. He had already found as a fact that the various acts of the appellees did not interfere with appellants' rights and that the appellees had a legal right to convey.

The appellants also contend that the court below having once assumed equitable jurisdiction, should have "retained its jurisdiction and opened the judg-

ment in ejectment". They rely on the principle that where a court in equity has assumed jurisdiction for one purpose, it will retain it for all purposes. However, this principle is not inflexible in its application, being permissive rather than peremptory. Its exercise lies within the discretion of the court. Appellants proceeded to have the case heard on the merits in the ejectment proceeding, the disposition of which resolved the entire controversy between the parties. Only after a determination adverse to them did they question the propriety of the court's action. We find no abuse of discretion on the part of the lower court.

The order of the court below is affirmed.