Ackerman *v.* North Huntingdon Township (et al., Appellant).

Argued October 6, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Leonard Boreman*, with him *Harold A. Gold*, and *Baskin, Boreman, Sachs, Gondelman & Craig*, for appellant.

*Joseph M. Loughran*, with him *Loughran & Loughran*, for appellee.

OPINION BY MR. JUSTICE COHEN, January 30, 1970:

Appellee, Alvin Ackerman, a developer of residential home sites in North Huntingdon Township (Township), Westmoreland County, known as Markvue Manor, brought this action in equity against the Township of North Huntingdon, Crestview Land Company (Crestview), appellant herein, and Marwood Corporation (Marwood) seeking to restrain the three parties from permitting any sewage from the Crestview development to flow into the Five Pines-Lincoln Way trunk sewer transportation lines which Ackerman had built. The court below found that Ackerman did have title to the sewer line, but it refused to issue an injunction and instead assessed damages of $15,000 against Crestview.

The relevant facts are as follows: Three tracts of land are involved in the dispute. Crestview owns the northern-most tract; Marwood owns the one in the middle; and Ackerman owns the southern-most tract. On July 9, 1959, in connection with his development

of Markvue Manor, Ackerman entered into a contract with Township providing for the construction of a sewage treatment plant to service that development. Township was to acquire a permit from the State Board of Health to allow that plant to be built. On November 8, 1961 a new agreement modifying the original agreement was entered into by which, inter alia, in consideration of Ackerman's agreeing to construct certain sewer transportation lines on Five Pines-Lincoln Way, Ackerman would be relieved of the duty of constructing the sewage treatment plant. Prior to this latter agreement, Township had agreed with White Oak Borough and the City of McKeesport to create a comprehensive system of sewers for the transportation of sewage through lines of the Township, then through lines of the White Oak Authority and into the facilities of the McKeesport Authority. Township made application to the Commonwealth for a sewer permit for the construction and operation of the trunk transportation sewers in the Five Pines-Lincoln Way area. As granted, the permit covered a drainage area of 1014.5 acres, an area including the three properties involved in this action plus properties owned by others not involved in this proceeding.

Ackerman completed construction of the sewer line in August, 1962, and prior thereto he had signed an agreement with Marwood granting Marwood, in return for $10,000, the right to connect with the Five Pines-Lincoln Way sewer line. On October 10, 1963 Township, acting without Ackerman's knowledge or consent, authorized Crestview to connect with that sewer line and the record indicates that Crestview did tie into and make use of that sewer line immediately.

The real question presented in this appeal is whether Township had the authority to grant Crestview permission to use this sewer line or whether the authority to grant use of the line belonged to Ackerman. It is

conceded that Crestview never dealt directly with Ackerman and that its rights depend on the validity of Township's contract with it. The court below found that title to the line lay in Ackerman, but it refused to grant injunctive relief because the harm that would be caused thereby outweighed any interest of Ackerman's. It did, however, award damages in the amount of $15,000.

In asserting his rights, Ackerman relies on the contracts between himself and Township. Under the modified agreement of November 8, 1961, Ackerman agreed:

"To install all necessary sewer lines and appurtenances as designated, directed and approved by the Engineer of the [Township] for the transportation of sewage from said Markvue Manor Plan to the White Oak Borough Authority lines; (paragraph 1)

"To maintain the sewer lines for one (1) year after the date of the completion of the entire line; (Paragraph 5)

"Upon completion of all work and the acceptance of the lines by the party of the second part and its engineer, the party of the first part [Ackerman] shall dedicate and transfer good title by deed, bill of sale, or otherwise, of all sewer lines aforesaid to the party of the second part [Township]." (Paragraph 8).

Thus, the parties clearly have provided that Ackerman should build the lines and after acceptance by Township and its engineer, should give title over to Township. Therefore, until there has been this acceptance, title remains in appellee. The record is clear that at least until December 13, 1963, Township made no attempt to assert its rights under paragraph 8. On that date it sent a letter[1] to Ackerman stating its

---

[1] The letter refers to paragraphs 5 and 6 of the July 9, 1959 contract, but that contract deals mainly with the sewage treatment plant that Ackerman was to have built. Under the changed cir-

desire to "exercise its option to take over and operate the sewage line which you have constructed." There is some dispute between the parties as to whether at this time Township had done all that was necessary to perfect its rights under those contracts. Under our analysis of the case, it does not matter whether Township's rights were perfected on December 13, 1963 or at some later date. What is important is that for a period of time Crestview was transporting sewage through a line whose owner had not given permission for those actions. There seems no question that that state of affairs had existed for at least two months.

On the question of title, appellant relies on the fact that this sewer line was part of an overall sewage disposal plan established by Township and that all the State Permits issued for the project were issued only to Township. The latter fact can not be determinative of the issue of title when as between themselves the parties have clearly indicated what the ownership situation was to be. As to the former, there seems no question that a municipality can permit sewers to remain in private hands even though other parts of the same system belong to that municipality. Act of July 21, 1959, P. L. 557, §1(a), 53 P.S. §57415(a) (Supp. 1969), (by implication); 26 P.L.E. Municipal Corporations, §485 (1960). There would also seem to be no requirement of public policy that sewers not be owned by private individuals.

Having determined that appellant was without permission using Ackerman's line for some period of time, it is necessary to determine what sanction is proper. We agree with the court below that injunctive relief is improper as it would cause more harm than the interests of Ackerman warrant. As to monetary damages, once

cumstances existing on December 13, 1963, it seems fair to assume Township really was referring to paragraph 8 of the modified contract.

equity has assumed jurisdiction of an action it may retain jurisdiction to ensure a just result even if that result is merely a money decree. *Lafean v. American Caramel Co.*, 271 Pa. 276, 114 Atl. 622 (1921); 13 P.L.E. Equity, §163 (1959). The court below ordered Crestview to pay $15,000 although it gave no indication how it arrived at that figure. We are of the opinion that Crestview should pay a proportionate part of the cost of the line. The lower court in determining that amount should take into consideration the number of Crestview tap-ins in relation to the total number of tap-ins, the area served, and any other relevant factor.[2]

The decree of the court below is vacated, and the record is remanded for a determination of damages in conformity with this opinion. Costs on appellant.

Mr. Chief Justice BELL dissents.

---

[2] It is clear that Ackerman should make no profit because it was the Township's contracting with White Oak and McKeesport that saved him the expense of building a sewage treatment plant.