Saint Vladimir Ukrainian Orthodox Church, Appellant, *v.* Preferred Risk Mutual Insurance Company.

Argued September 8, 1975. Before WATKINS, P. J.,

Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

*Joseph A. Malloy, Jr.,* with him *Hamilton, Darmopray & Malloy,* for appellant.

*Michael J. Pepe, Jr.,* for appellee.

Opinion by Jacobs, J., March 29, 1976:

This is an appeal from an Order of the Court of Common Pleas of Philadelphia County denying plaintiff-appellant's Petition to Strike Off Judgment of Non Pros. Appellant contends that the lower court's failure to strike the Judgment of Non Pros. constituted both error of law and manifest abuse of discretion.[1]

Plaintiff-appellant Saint Vladimir Ukrainian Ortho-

---

1. A motion to strike off a judgment of non pros. challenges only defects apparent on the record, and such a motion may not be granted on the basis of facts dehors the record. We would thus ordinarily be constrained to summarily dismiss this appeal because appellant points to no defects on the face of the record of judgment, *Cox v. Felice Perri & Sons,* 412 Pa. 415, 195 A.2d 79 (1963); *Silverman v. Polis,* 230 Pa. Superior Ct. 366, 326 A.2d 452 (1974), or, to remand to allow the lower court to consider the petition as one to open, *Whatley v. Baynard,* 437 Pa. 498, 264 A.2d 721 (1970). However, since the court and the parties below have already considered the petition as if a petition to open, we may also do so here. *See Goldstein v. Graduate Hosp.,* 441 Pa. 179, 272 A.2d 472 (1971); *Mazer v. Sargent Electric Co.,* 407 Pa. 169, 180 A.2d 63 (1962).

dox Church (hereinafter Vladimir) instituted the underlying action by filing a complaint in assumpsit against defendant-appellee Preferred Risk Mutual Insurance Company (hereinafter Mutual) on January 9, 1974. Vladimir sought to recover under a Mutual fire insurance policy which named Vladimir as mortgagee of church buildings situated on Germantown Avenue and West Berks Street, Philadelphia. In the complaint and the pleadings thereafter filed Mutual averred that the policy had been cancelled before a June 10, 1973 fire destroyed one of the buildings and damaged the other; Vladimir alleged that it had not been notified of cancellation and that sums were therefore due under the policy as a result of the fire.[2]

On May 6, 1974, Mutual filed a motion for inspection and photocopying of documents and for inspection of the premises involved. An Order was thereafter entered by Judge KAGAN on May 17, 1974, granting Mutual's motion. The Order provided that Vladimir should produce certain documents for photocopying and inspection, and also provided, *inter alia*, that: "Plaintiff [Vladimir] *shall file a list* of the aforementioned documents furnished to Defendant, identifying said documents within thirty (30) days of this Order *and shall furnish Defendant copies or permit Defendant to photocopy and inspect* said documents *at Defendant's attorney's office* within thirty (30) days of the date of this Order and Defendant is given leave to enter a judgment of non pros with the Prothonotary upon Plaintiff's failure to comply with the aforegoing." (emphasis added).

---

2. The docket reveals the filing of the following initial pleadings:
January 9, 1974 - Vladimir Complaint
April 17, 1974 - Mutual Answer & New Matter
May 3, 1974 - Vladimir Answer to New Matter
May 6, 1974 - Mutual Motion For Inspection & Photocopying (Granted May 17, 1974)
July 23, 1974 - Mutual Amended Answer & New Matter
August 16, 1974 - Vladimir Answer to Amended New Matter.

The Order further provided that: " ... Plaintiff shall permit Defendant and its agents to inspect premises 1848 Germantown Avenue and 518 West Berks Street, Philadelphia, Pennsylvania."

Vladimir never fully complied with the above Order[3] and Mutual filed a praecipe for judgment of non pros. on November 19, 1974. Vladimir's petition to strike that judgment was denied April 8, 1975 and again on May 2, 1975, after oral argument had on April 28, 1975.[4]

In order for Vladimir to prevail on its petition to open the judgment below, it had to establish the necessary criteria for the opening of a judgment of non pros., which are that: (1) the petition must be timely filed; (2) the reason for the default must be reasonably explained or excused; and (3) the facts constituting grounds for the cause of action must be alleged. *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Goldstein v. Graduate Hosp.*, 441 Pa. 179, 272 A.2d 472 (1971); *Thorn v. Clearfield Borough*, 420 Pa. 584, 218 A.2d 298 (1966); *Boyles v. Sullivan*, 230 Pa. Superior Ct. 453, 326 A.2d 440 (1974). The only issue

---

3. Vladimir provided a *list* of documents to Mutual on November 15, 1974, just prior to the date of the judgment of non pros. However, no copies nor the originals (for the purpose of being copied) were ever furnished. The premises were razed between the date of the Order and the date of the judgment of non pros. and no arrangements were ever completed for viewing them with or without the buildings.

4. No depositions were taken nor were separate affidavits filed. The motion to strike was thus apparently considered solely on the petition and answer together with the oral argument of April 28, 1975. *See, Poluka v. Cole*, 222 Pa. Superior Ct. 500, 295 A.2d 132, *allocatur refused*, 222 Pa. Superior Ct. *xxxii* (1972). Although not a basis for our decision, we note that under Pa.R.C.P. 209 it was petitioner Vladimir's responsibility to take depositions or be deemed to have admitted all the averments in the answer which were responsive to its petition. *See, Kessler v. Cardonick*, 229 Pa. Superior Ct. 97, 323 A.2d 378 (1974). Mutual's answer to Vladimir's petition here averred that there was no agreement or understanding and otherwise denied the factual basis for Vladimir's explanation of the delay in complying with the discovery order.

controverted below was whether the default was reasonably explained or excused.

Vladimir's explanation for the default consisted of counsel's averment that there was an oral agreement between the attorneys to defer compliance with the Order until after November 5, 1974. Vladimir further contended below that the conflict as to the existence of an oral agreement constituted a misunderstanding between the parties with regard to Mutual's demand for prompt compliance.

The lower court held that Vladimir failed to reasonably explain or offer a legitimate excuse for the delay that occasioned the judgment of non pros. In so holding it observed that it was unable to make a finding that an understanding existed between counsel for the parties and that the assertion of a misunderstanding was without merit in view of the written demands for compliance with the Order of May 17, 1974, made by counsel for Mutual in various letters.

It has often been said that a petition to open judgment is an appeal to the court's equitable powers, *e.g.*, *Wenger v. Ziegler*, 424 Pa. 268, 226 A.2d 653 (1967), and is therefore within the discretion of the court and will not be overturned absent a clear, manifest abuse of discretion. *E.g.*, *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973); *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Kilgallen v. Kutna*, 226 Pa. Superior Ct. 323, 310 A.2d 396 (1973). " 'An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' Mielcuszny et ux. v. Rosol, 317 Pa. 91, 93, 94, 176 A. 236." *Garrett's Estate*, 335 Pa. 287, 293, 6 A.2d 858, 860 (1939).

We have reviewed the record and find it devoid of any indication of bias, prejudice, ill-will or partiality;

appellant has not claimed that such an indication is present. Moreover, our review of the applicable law discloses that the lower court properly applied that law by employing the correct criteria for consideration of a petition to open and by appropriate consideration of appellant's claim of an oral understanding. We are therefore left only with consideration of whether the judgment exercised by the court below was manifestly unreasonable. We conclude that it was not.

A review of the facts pertinent to Vladimir's contention that its delay was reasonable because based on an understanding of counsel reveals that the lower court could have reasonably concluded that Vladimir's claim of an agreement was unsupported by the record. The record shows that Mutual sent a copy of the Order of May 17, 1974 to Vladimir on May 23, 1974. On June 26, 1974, after the thirty days specified in the order elapsed, Mutual's counsel wrote Vladimir's counsel that "[o]ur client is pressing us to take additional steps to obtain compliance with the court order of May 17, 1974, or to conclude the case." No response evidencing an agreement to postpone compliance is thereafter of record, and on September 4, 1974 counsel for Mutual again wrote: "On May 17, 1974, the court entered a discovery order requiring compliance by the plaintiff within thirty days under penalty of a judgment of non pros. No attempt has been made to comply with the discovery order and we request that you give this your attention at your earliest convenience." Counsel for appellant Vladimir made its first affirmative response by letter on September 10, 1974. Again, no reference appears to an agreement to postpone compliance until after November 5, 1974. That letter reads, *inter alia*, as follows: " ... I would appreciate your calling me so we can arrange a mutually convenient time for you to review and/or copy the documents you requested." A telephone conversation apparently occurred on September 12, 1974 and counsel for appellee Mutual wrote on September 19, 1974: "This

will confirm our telephone conversation of September 12, 1974 in which you indicated that you would make up a list and two sets of photocopies of the relevant documents, *send them to our office,* and thereafter arrange an appointment to view the premises." (emphasis added). On October 2, 1974 counsel for appellant Vladimir wrote that they wanted to "get this matter moving and await your call" to arrange an appointment. On October 15, 1974, appellee Mutual again insisted on having a set of documents sent, referring to a phone conversation of October 3, 1974: "You will recall on October 3, 1974, we had a conversation in which you indicated that you would comply with the discovery order entered in the above matter along the lines previously agreed. Please give this matter your attention at your earliest convenience." No further communication is indicated until November 6, 1974, when counsel for appellee Mutual again demanded compliance: "Our client feels that Plaintiff's failure to comply with the discovery order and failure or refusal to permit the defense to examine the premises involved is seriously prejudicing their rights in the defense of the case. We are constrained to inform you that, unless full compliance with the order is had by November 15, 1974, we will be obliged to take further steps to protect our interest."

It was only after the above demand was received that Vladimir first claimed an agreement existed. On November 8, 1974, counsel for appellant wrote the following: "I was somewhat surprised to receive your note of the 6th. I thought it had been understood we would get together after the elections to go over this and wind up all the discovery problems. My schedule is pretty free in the mornings of November 13, 15, 18, 19 and 22. Let me know which, if any, would be convenient for this purpose. We can arrange then for a viewing of the premises."

Vladimir's claim of an agreement was quickly denied by counsel for appellee Mutual, who wrote on November

12, 1974: "We never discussed any elections and what we discussed was that you were to comply with the discovery order of May 17, 1974 forthwith."

Under cover of a letter dated November 15, 1974 counsel for appellant Vladimir finally furnished a list of the documents but still did not furnish copies nor the originals to be photocopied. Additionally, Mutual was advised as of that date that the fire damaged building had been razed in the interim, at the request of the City of Philadelphia. On November 19, 1974, appellee Mutual filed its praecipe for judgment of non pros., more than 5 months after the Order's required date of compliance and 14 days after the alleged extended date of compliance, November 5, 1974.

Based on the preceding we cannot conclude that the lower court's finding that no agreement was shown was unreasonable nor can we say that the explanation for the delay in complying with the Order was reasonable. The purported oral agreement was contrary to Pa.R.C.P. 201 and was further discredited by the fact that it was in no way admitted. *See, Appel Vending Co. v. 1601 Corp.*, 204 Pa. Superior Ct. 243, 203 A.2d 812, *allocatur refused*, 204 Pa. Superior Ct. *xxxvii* (1964); *Flynn v. Sievers*, 10 Pa. D. & C.2d 383 (C.P. Pike 1956), *aff'd*, 389 Pa. 142, 132 A.2d 180 (1957). Since Vladimir's sole excuse for default was the existence of an agreement of counsel, the lower court's finding that no reasonable explanation was advanced was properly dictated by its conclusion that no agreement was shown. Even if there was an agreement, appellant had still not produced the documents 14 days after the date of the extension it says it was granted. *See, Pappas v. Stefan*, supra; *McCoy v. Public Acceptance Corp.*, supra.

Counsel for Vladimir also complains that it did not receive notice of Mutual's intention to enter the judgment of non pros. Although lack of notice may be a factor in determining that a judgment should be opened, *Silverman v. Polis*, 230 Pa. Superior Ct. 366, 326 A.2d 452

(1974), appellee Mutual's letters of November 6 and November 12, 1974, clearly indicated Mutual's intentions and the Order of May 17, 1974 itself advised appellant Vladimir of the possible sanction involved.

Appellant also seeks to establish that even if there was no understanding, there was sufficient "confusion" and misunderstanding to justify a finding that the default was reasonably explainable. In support of this contention appellant cites to us two older cases holding that relief from judgment entered by default due to an oversight of counsel may be granted: *Glass v. Farmers Nat'l Bank*, 364 Pa. 186, 70 A.2d 356 (1950); *Kulp v. Lehigh Valley Transit Co.*, 81 Pa. Superior Ct. 296 (1923). However, appellant overlooks the fact that in both of those cases the lower court had *opened* the judgment. It was not held therein that *failure to open* was an abuse of discretion, but rather that the lower court's discretion was not abused by the decision *to open*. Whereas the excuse of mistake, confusion or inadvertence with something more might be sufficient to *justify* a lower court exercising its discretion to open a judgment, the *failure* of the lower court to open where those explanations are advanced could hardly be considered a manifest abuse of discretion. Were we to hold that the failure to open where these reasons are advanced always constitutes an abuse of discretion, we would usurp the discretion of the court below. Our task on review of discretion is not to substitute our judgment for that of the lower court but to determine if the lower court's action was manifestly unreasonable. *Garrett's Estate*, supra. In the present case the record reveals that it was not manifestly unreasonable to refuse to open the judgment. Moreover, our recent case law has recognized that mere confusion, *see, Triolo v. Philadelphia Coca Cola Bottling Co.*, 440 Pa. 164, 270 A.2d 620 (1970), bald allegations of inadvertence of counsel, *Goldstein v. Graduate Hosp.*, supra; *Carrozza v. Girard Chevrolet Co.*, 200 Pa. Superior Ct. 502, 190 A.2d 577 (1963), mistake or

inadvertence of counsel (without more), *see, Westinghouse Credit Corp. v. Wenzel,* 223 Pa. Superior Ct. 87, 289 A.2d 759 (1972); *Spilove v. Cross Transp., Inc.,* 223 Pa. Superior Ct. 143, 297 A.2d 155 (1972), or demands on the time of counsel, *see, Goldstein v. Graduate Hosp.,* supra; *Walters v. Harleysville Mut. Cas. Co.,* 417 Pa. 438, 207 A.2d 852 (1965); *Seltzer v. Ashton Hall Nursing & Convalescent Home,* 221 Pa. Superior Ct. 127, 289 A.2d 207, *allocatur refused,* 221 Pa. Superior Ct. *xliii* (1972), are not patently reasonable excuses and that *failure* to open based upon these explanations is not an abuse of discretion.

This case presents no additional equities in favor of appellant beyond counsel's allegation of a "misunderstanding" and confusion as to whether an extension of over five months had been granted. On the other hand, appellee alleged that it was prejudiced by being denied the opportunity to inspect the buildings before they were razed and by the lack of a basis for preparing its defense. This is not a case wherein a "snap judgment" was taken, *see, e.g., Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144 (1971); *Ab v. Continental Imports,* 220 Pa. Superior Ct. 5, 281 A.2d 646 (1971), nor was there a studied attempt to take a judgment by default. *Fox v. Mellon,* 438 Pa. 364, 264 A.2d 623 (1970). Moreover, if counsel for appellant was unable to comply with the thirty day time limitation of the Order of May 17, 1974 his remedy was to seek a *written* extension from appellee or to seek discharge or modification of the Order, not to ignore it. *See, Pappas v. Stefan,* supra; *Kramer v. Philadelphia,* 425 Pa. 472, 229 A.2d 875 (1967); *Isenberger v. Schumann,* 34 Pa. D. & C. 2d 315 (C.P. Allegheny 1964), *aff'd,* 415 Pa. 217, 203 A.2d 136 (1964) (per curiam, on the opinion of the lower court).

Order affirmed.

HOFFMAN, J., joined in both the majority opinion by JACOBS,J., and the concurring opinion by CERCONE, J.

CONCURRING OPINION BY CERCONE, J.:

I join in the majority opinion, but wish to add only these few words more. Under the facts of this case, if the court's order had the effect of forever barring plaintiff's recovery under the allegedly effective insurance policy, I would think the order unnecessarily severe. The only demonstrable detriment to defendant caused by plaintiff's failure to strictly comply with the order's 30 day limit was the razing of the burned remains of the buildings, at the command of the City of Philadelphia. However, the razing took place on July 11, 1974, during the period when the defendant had manifested no immediate intention of demanding strict compliance with the court order. Furthermore, plaintiff alleges without refute that it was not the owner of the premises, so that its giving defendant the right to inspect the land would have been a meaningless gesture. However, the Pennsylvania Rules of Civil Procedure, Rule 4019 permits the court to impose appropriate sanctions for failure to comply with an order entered under Rule 4009, and the inspection order was entered under Rule 4009. Since a judgment of non pros. does not have the effect of res judicata and is not a bar to a subsequent lawsuit on the same cause of action,[1] the entry of the judgment of non pros. was appropriate under the facts of the instant case. The six-year statute of limitations for contract actions has not expired,[2] so the court's order does not finally determine the outcome of plaintiff's case.

HOFFMAN, J., joins in this concurring opinion.

DISSENTING OPINION BY SPAETH, J.:

This is indeed a difficult case. I have finally concluded, however, that I would remand for further proceedings.

The result of refusing to take off the judgment of non

---

1. 5 Standard Pennsylvania Practice §45 (1958).
2. Act of March 27, 1713, 1 Sm. L. 76, §1, 12 P.S. §31 (1953).

pros. is to penalize the church because its lawyer offered to exhibit the documents in his office instead of taking them to the office of the lawyer for the insurance carrier. I agree that there is no explanation why he did not take them to the office of the lawyer for the carrier, even though the court order said he should, or why he was so slow in assembling the documents and offering to exhibit them. Even so, apparently there is no question that he did finally assemble the documents, and the lawyer for the carrier certainly might have been less rigid and have walked down the street and looked at them. Instead: "You come to my office." "No, you come to mine." Somewhere in this rather petty dispute between two wilful men I fear justice has been lost sight of.

The decisive fact for me is that the carrier initiated this litigation by denying coverage. Let me illustrate my point by stating a hypothetical case. Suppose plaintiff gets sick, and after being treated by his doctor, and recovering, makes a claim for medical insurance benefits from defendant carrier. Carrier denies coverage, asserting cancellation of the policy. Plaintiff sues; his lawyer is ordered to give the carrier's lawyer copies of the medical bills; he doesn't, although telling the carrier's lawyer that he will show him the bills; and judgment of non pros. is entered. If an examination of the bills showed that there could be no question about the fact of the illness and the reasonableness of the treatment, so that the only real issue was whether the policy was in effect, I submit that the judgment would be taken off, leaving to trial the issue of whether there had been cancellation. The same situation may be presented here.

I grant that it may not be; but I should like to know. Without knowing, I cannot decide whether the lower court did or did not abuse its discretion. Although we should reverse only for an abuse of discretion, to decide whether there has been an abuse, we need an adequate record. *Cf. Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 312 A.2d 58 (1973).

If the amount of loss is a real issue, then no doubt the judgment should not be taken off, for the carrier's ability to resist a possibly excessive claim would have been prejudiced; while the church's lawyer delayed, the church was razed. If, however, cancellation is the only real issue, I see no reason why the carrier should not be put to its proof.

I would therefore remand for a further hearing.

PRICE, J., joins in this opinion.