386 A.2d 569

LONG JOHN SILVER'S, INC., a corporation

v.

William FIORE, Harold Aletto and Paul Lesko (two cases).

**Appeal of Harold ALETTO.**

**Appeal of Paul LESKO.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided April 28, 1978.

Frank E. Coho, Pittsburgh, for appellants.

Michael D. Fox, Pittsburgh, with him Robert Engel, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in (1) granting appellee's motion for summary judgment, and (2) dismissing appellants' equitable claims and transferring them to the law side of the court as claims for damages only. We disagree and, therefore, affirm the lower court.

This case arises from conflicting claims to a twenty feet wide strip of land in Pleasant Hills Borough, Allegheny County. The pleadings, affidavits, and deposition reveal the following facts. William Fiore is the owner of several parcels of land in Pleasant Hills Borough in Allegheny County, Pennsylvania. On March 19, 1973, Fiore entered into an agreement of sale with appellant Harold Aletto (d/b/a BKM Services, Inc.) for a parcel of land with 150 feet of frontage along Route 51 in Fiore's lot plan. Aletto sought to purchase the land as a location for a Burger King restaurant. Although Aletto and the real estate agent signed the agreement, Fiore never signed it. The agreement was never recorded.

Subsequently, on June 12, 1974, Fiore entered into a sales agreement with Long John Silver's, Inc., a fast-food restaurant chain, under which Fiore was to convey to Long John Silver's a parcel of land with a frontage of 110 feet along Route 51 in Fiore's plan (the "LJS Parcel"). The agreement, signed by Fiore and Long John Silver's, provided for a sales price of $100,000.00; Long John Silver's paid $10,000.00 and agreed to pay the balance at closing. This agreement was never recorded.

On November 18, 1974, unbeknownst to Long John Silver's, Fiore and Aletto (d/b/a BKM Services, Inc.) signed a Release From Agreement which terminated the March 19, 1973 agreement between them. On the same day, Fiore entered into a ground lease agreement with Paul Lesko, a non-United States citizen residing outside of the United States. The ground lease contemplated rental of a parcel of land in Fiore's lot plan that had 160 feet of frontage along Route 51, 140 feet of which was adjacent to the LJS Parcel and 20 feet of which allegedly was part of the LJS Parcel. Aletto represented Lesko in this transaction as his attorney.

On October 25, 1974, Fiore and Long John Silver's obtained the last of the permits, authorizations, and approvals which were conditions precedent to closing on the June 12, 1974 contract. A closing was scheduled in the offices of Commonwealth Land Title Insurance Company on November 14, 1974. Present at the closing were Long John Silver's real estate representative, Paul R. Burkhardt, the closing officer, Cyril C. Gunst, Jr., and the escrow agent representing Commonwealth, Joseph L. Luciana, Jr. When Fiore arrived, accompanied by his attorney Ronald McKay, he announced that he was not yet ready to close because he needed more property in order to meet the need of a Burger King franchisee, Harold Aletto. Fiore further indicated that he would attempt to obtain from Chrysler Realty Corp. the additional property needed for both transactions. Luciana, the escrow agent, stated that he had not yet received the balance of the purchase price from Long John Silver's. Long John Silver's counsel in Kentucky, Curtis L. Wilson, advised Luciana that final closing figures were required in order to send the funds and that the funds would be wired to Commonwealth the next day. The balance of the purchase price, $91,486.25, was, in fact, credited to Commonwealth's escrow account on November 15, 1974.

On November 15, 1974, Long John Silver's notified Fiore that it was prepared to close on the agreement on November 18, 1974, in Commonwealth's offices. Neither Fiore nor his attorney appeared at that time. Subsequent closings were

rescheduled for November 19, and November 22, 1974. Long John Silver's representatives were present at the designated times and places, but Fiore cnce again did not appear. On November 25, 1974, Long John Silver's sent Fiore a certified letter advising Fiore that he was in default for failing to appear at the closings scheduled for November 18, 19, and 22. Fiore responded in a letter on December 5, 1974, in which he alleged that Long John Silver's was in default of the agreement for failing to close on or before November 4, 1974, and for failing to pay the balance of the purchase price at the November 14, 1974 attempted closing.[1] Fiore also claimed that his appearance at the November 14, 1974 attempted closing did not waive his claim of breach for failure to close before November 4, 1974. This was the first indication that Fiore considered Long John Silver's to be in breach or default of the agreement.

On December 13, 1974, and again on December 18, 1974, Long John Silver's arranged another closing for December 18, 1974. Long John Silver's representatives were present at the designated times and places but Fiore failed to appear.

On January 31, 1975, Long John Silver's served a writ of summons in equity on Fiore. Subsequently, pursuant to an order of the court, Long John Silver's amended its writ of summons to add Harold Aletto as a defendant and filed a complaint in equity in the Court of Common Pleas of Allegheny County. In the complaint, Long John Silver's sought, *inter alia*, specific performance of the June 12, 1974 agreement of sale. Upon discovering Lesko's alleged leasehold interest in the property, Long John Silver's amended its complaint again on September 8, 1975 to name Lesko as an additional defendant.

1. The June 12, 1974 agreement between Fiore and Long John Silver's provided for closing within ten days of satisfaction of all the conditions precedent to the contract. Because the parties fulfilled the last of the conditions on October 25, 1974, Fiore contended that the agreement required them to close on the sale by November 4, 1974. However, the record amply supports the lower court's finding that agreements to extend the time period and the parties actions negated the ten day requirement.

After discovery, Long John Silver's petitioned the court for partial summary judgment against Fiore, Aletto, and Lesko on the issue of Long John Silver's right to the LJS Parcel, the subject of the June 12, 1974 agreement of sale. On November 8, 1976, the lower court issued an adjudication and *decree nisi* awarding Long John Silver's specific performance of the agreement with Fiore for conveyance of the LJS Parcel and extinguishing any rights of appellants in the parcel. The lower court based its decision on a finding that at the time of the November 18, 1974 release between Fiore and Aletto, the agreement of sale between Long John Silver's and Fiore assumed priority to the ground lease between Fiore and Lesko regarding the disputed twenty feet wide strip of land.[2]

Appellant Fiore filed neither exceptions to the adjudication and *decree nisi* nor an appeal. Consequently, the court's findings regarding Fiore are final.[3] Appellants Aletto and Lesko briefed and argued their exceptions to the adjudication to the lower court, *en banc*, which dismissed the exceptions and made the *decree nisi* final on April 20, 1977. The court found that the *decree nisi* extinguished all of appellants' rights to the LJS Parcel but preserved whatever rights appellants may have had against Fiore for leasing them property to which equitable title had already been transferred. Accordingly, the lower court concluded that appellants appeared to have an action at law for damages against Fiore and transferred the matter to the law side of the court. This appeal followed.

Appellants first contend that the lower court erred in granting summary judgment to appellee. The law of sum-

2. Approximately ten months after Long John Silver's began its suit, appellants commenced a separate suit in equity against Fiore and Long John Silver's seeking to enforce any rights that either appellant might have to obtain conveyance from Fiore of 160 feet of frontage. Appellants filed a motion to consolidate their case against Fiore and Long John Silver's with the case of Long John Silver's against Fiore, Aletto, and Lesko. The lower court did not act on the petition.

3. Exceptions must be filed within twenty days after notice of the adjudication or they are deemed waived. Pa.R.C.P. 1518; 42 Pa.C.S. § 1518.

mary judgment is well-settled. "Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of judgment." (Citations omitted). *Husak v. Berkel, Inc.,* 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975). *See also Marchese v. Marchese,* 457 Pa. 625, 326 A.2d 321 (1974); *Goldman v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968); *Aughenbaugh v. North Am. Refractories Co.,* 426 Pa. 211, 231 A.2d 173 (1967); *Amabile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 376 A.2d 247 (1977). Thus, the burden is on the moving party to show that no genuine issue of material fact exists. *Prince v. Pavoni,* 225 Pa.Super. 286, 302 A.2d 452 (1973); *Schacter v. Albert,* 212 Pa.Super. 58, 239 A.2d 841 (1968).[4] However, when a motion for summary judgment is made and properly supported, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavits or otherwise  .  .  ., must set forth specific facts showing that there is a genuine issue for trial." Pa.R. C.P. 1035(d); *Marchese v. Marchese, supra.* Application of these standards to the law and facts of the instant case demonstrates that the lower court correctly granted appellee's motion for summary judgment.

Under Pennsylvania law, at the time of signing an unconditional agreement for the sale of land, the buyer acquires an equitable interest in the land. *Byrne v. Kanig,* 231 Pa.Super. 531, 332 A.2d 472 (1975). This rule is consistent with the common law rule regarding unrecorded deeds and agreements of sale whereby a buyer acquires an equita-

4. Pa.R.C.P. 1035 applies to suits in equity as well as law. *See* Pa.R.C.P. 1501.

ble interest in the land. At common law, the first buyer's deed was superior to subsequent deeds to the property conveyed by the same grantor, regardless of whether the first deed was without consideration and the subsequent deed was to a bona fide purchaser without notice. The Pennsylvania recording statute,[5] however, protects subsequent purchasers by giving a subsequent bona fide purchaser for value without notice of a prior transaction priority over the equitable estate of the first owner. *Lund v. Heinrich*, 410 Pa. 341, 189 A.2d 581 (1963). However, in order to qualify as a bona fide purchaser, the subsequent buyer must be without notice of the prior equitable interests of others. *Overly v. Hixson*, 169 Pa.Super. 187, 82 A.2d 573 (1951). If the subsequent purchaser has notice of the first agreement of sale or deed, he has no protection as a bona fide purchaser and his title is subject to the interest vested in the first purchaser. Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a bona fide purchaser. *Overly v. Hixson, supra.* Because constructive notice is not limited to instruments of record, a subsequent purchaser may be bound by constructive notice of a prior unrecorded agreement.

**5.** Act of May 12, 1925, P.L. 613, § 1; June 12, 1931, P.L. 558, No. 191, § 1; 21 P.S. § 351 provides:

"All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages."

*Overly v. Hixson, supra* ; *Smith v. Miller,* 296 Pa. 340, 145 A. 901 (1929). This is true because the subsequent purchaser could have learned of facts that may affect his title by inquiry of persons in possession or others who the purchaser reasonably believes know such facts. *Lund v. Heinrich, supra* ; *Sidle v. Kaufman,* 345 Pa. 549, 29 A.2d 77 (1943).

■ By analyzing the facts of the instant case, it becomes apparent that neither appellant was a bona fide purchaser without notice of the prior agreement of sale. The March 19, 1973 Sales Agreement demonstrates that the designated buyer was appellant Aletto (d/b/a BKM Services, Inc.). Thus, appellant Lesko can claim no interest in the property based on that agreement. Moreover, Aletto's interest in the property that was the subject of the March 19, 1973 agreement was terminated by the November 18, 1974 Release From Agreement between Aletto (d/b/a BKM Services, Inc.) and Fiore which provides in pertinent part:

"WHEREAS, the parties hereto entered into an Agreement of Sale dated March 19, 1973 for certain property situate on Route # 51 in the Borough of Pleasant Hills, Allegheny County, Pennsylvania, a copy of which is attached hereto as Exhibit A; and

"WHEREAS, the parties hereto now wish to cancel, nullify, rescind and set aside said Agreement, and each to release the other from all promises, covenants, conditions and liabilities in connection therewith.

"NOW, THEREFORE, the parties hereto, in consideration of the mutual promises and conditions contained herein, and intending to be legally bound hereby, agree as follows:

"1. Seller hereby releases Buyer from any and all liability, past, present or in the future, in connection with said Agreement.

"2. Buyer hereby releases Seller from any and all liability, past, present or future, in connection with said Agreement."

Appellants have indicated nothing in the Release nor any other fact of record which contradicts the unequivocal lan-

guage of the Release or which otherwise creates any issue of fact regarding its interpretation. Nor have appellants demonstrated anything in the November 18, 1974 ground lease between Lesko, represented by Aletto, and Fiore which in any way incorporates or even refers to the March 19, 1973 agreement. Moreover, the ground lease contains a clause which specifically excludes any other written or oral agreement.

The facts further demonstrate that when Aletto signed the November 18, 1974 ground lease on behalf of Lesko, he had actual notice of Long John Silver's prior interest in the disputed property and that Lesko also had knowledge. In the New Matter incorporated in their Answer to Long John Silver's complaint, appellants admitted the following:

"56. At the time of signing the said Ground Lease on November 18, 1974, before signing any of the aforesaid papers signed that day, defendant Aletto inquired of defendant Fiore whether there was any truth to the rumor that defendant Aletto had recently heard that a Paul R. Burkhart or a company called "Long John Silver" had any rights or interest in the land covered by the Ground Lease.

"57. At the time of signing of said Ground Lease on November 18, 1974, before signing said Ground Lease and said Release of Sale Agreement, in order to induce defendant Aletto to sign said documents and pay a year's ground rent in advance, defendant Fiore informed defendant Aletto that he had agreed to sell Long John Silver's, Inc., one hundred ten (110) feet front of land fronting on said Route 51 and that said one hundred ten (110) feet front for Long John Silver's, Inc. and that one hundred sixty (160) feet front for defendant Aletto would be ready for them when they would be ready to begin their respective constructions of restaurant facilities; and the additional necessary land was then being obtained by defendant Fiore from the Chrysler Corporation, which owned the land immediately adjoining said Fiore Plan of Lots on the South.

"58. At the time of signing said Ground Lease on November 18, 1974, before signing said Ground Lease and said

Release of Sale Agreement, in order to induce defendant Aletto to sign said documents, defendant Fiore informed defendant Aletto that there seemed to be some mix-up in the drawings defendant Fiore had prepared relating to sales and rentals of parts of his land therefore known as the Fiore Plan of Lots, but that defendant Fiore was getting the drawings corrected and that there would be no conflict in the rights of defendant Aletto, who was the first to negotiate and contract with Fiore for land to be sold out of said Fiore Plan of Lots, and the later agreement between defendant Fiore and Plaintiff."

Moreover, Fiore's deposition substantiates appellants' knowledge of Long John Silver's interest in the property prior to their entering into the ground lease with Fiore:

"[Counsel for Long John Silver's]

"Mr. Fox: I will now paraphrase. That Aletto inquired of you whether a company called Long John Silver's had any interest in the land encompassed by the terms of the ground lease. Did Mr. Aletto ask that question, or something substantially like that?

"Mr. Fiore: Yes.

"Mr. Fox: And what was your response, sir?

"Mr. Fiore: That I had an agreement that ran out with Long John Silver as of November 4. And, a copy of the agreement was available to him, him and his attorney, at the time at Mr. McKay's office.

"Mr. Fox: You told them a copy of the agreement was available to them at that time?

"Mr. Fiore: Right there. As a matter of fact, his attorney read the Long John Silver's agreement.

"Mr. Fox: His attorney at that time was Mr. Coho?

"Mr. Fiore: Yes. And they also looked at the transmittals letters of transmittal between Ron McKay and Long John Silver's, and they were well aware of all the aspects of the

negotiations and the agreement between Long John Silver and myself. And they felt as I did at that time, that Long John Silver's defaulted in the agreement they had with me, and they felt that there was no problem of entering into an agreement on the purchase or lease—which worked out to be a lease at that time.

.    .    .    .    .

"Mr. Fox: Did they read the agreement of Long John Silver's?

"Mr. Fiore: Yes, they looked through it. Yes, they did.

"Mr. Fox: They asked you about whether you gave any notice to Long John Silver's?

"Mr. Fiore: We had all the letters of transmittal that Mr. McKay had of notifying Long John Silver's about times of closing and such, so they were well aware of the transaction with, Long John Silver's in its entirety."

Although appellants' counsel was present during Fiore's deposition, he made no attempt to cross-examine Fiore about his testimony. In addition, appellants made no effort to rebut Fiore's testimony in their affidavits or to otherwise explain the extent of their knowledge regarding Long John Silver's interest in the property. Instead, their affidavits explicitly reiterate the accuracy of the facts contained in Paragraphs 56 through 58 of appellants' New Matter. When a motion for summary judgment is made, and properly supported by affidavits and depositions, the adverse party may not rest upon mere allegations or denials in his pleadings but must set forth specific facts demonstrating a triable issue of fact. Pa.R.C.P. 1035(d); *Marchese v. Marchese, supra.* Appellants have failed to meet that burden in this case. Therefore, we accept as true the uncontradicted facts testified to by Fiore at his deposition.

The record thus reveals that at the time of signing the ground lease, appellant Aletto had actual knowledge of

Long John Silver's prior interest in the overlapping property. Lesko's knowledge of the agreement is established by his admissions in the New Matter and by his failure to refute Fiore's testimony.[6] Consequently, appellants were on notice to inquire into the situation by contacting Long John Silver's or its local representatives. Because neither appellant was a bona fide purchaser without notice Long John Silver's equitable interest had priority and the grant of summary judgment in its favor was correct.

Appellants' second contention is that the lower court erroneously transferred their claims against Fiore to the law side as claims for damages. Appellants cite no legal precedent for this theory other than the general principle that because an equity court may hear an entire case, it may decide issues which ordinarily would not be before it. However, this broad power is discretionary. *Ackerman v. No. Huntingdon Twp.*, 437 Pa. 49, 261 A.2d 570 (1970); *Ahrens v. Goldstein*, 376 Pa. 114, 102 A.2d 164 (1954). ". . . the principle that where a court of equity has assumed jurisdiction for one purpose, it will retain it for all purposes . . . is not inflexible in its application, being permissive rather than peremptory. Its exercise lies within the discretion of the court." *Ahrens, supra*, 376 Pa. at 122, 102 A.2d at 167. Moreover, although the mere existence of a legal remedy is not sufficient to preclude equity jurisdiction, a court of equity, may, in the exercise of its discretion, determine whether the legal remedy is full, adequate, and complete in view of all the surrounding circumstances and the conduct of the parties. *Ragano v. Rigot*, 25 Pa.Cmwlth. 428, 360 A.2d 779 (1976); *St. Joe Minerals v. Goddard*, 14 Pa.Cmwlth. 624, 324 A.2d 800 (1974). Finally, absent a manifest abuse of discretion, an appellate court will not reverse the decision of an equity court. *St. Vladimir's Ukrainian Orthodox Church v. Preferred Risk Mut. Ins. Co.*, 239 Pa.Super. 492,

6. Lesko's son, Paul R. Lesko, was also present at the November 18, 1974 meeting.

362 A.2d 1052 (1976); *In re Kadiliak's Estate*, 405 Pa. 238, 174 A.2d 870 (1961).

In the instant case, we do not find that the lower court abused its discretion by characterizing appellants' claims against Fiore as claims for damages and thus transferring them to the law side of the court. Once the lower court concluded that there were no material issues of fact and granted Long John Silver's motion for summary judgment, it extinguished any claims appellants might have had in the disputed property and recognized that appellants might still have a claim for damages against Fiore. We find that the lower court did not abuse its discretion by finding that claims for damages, traditionally a legal remedy, would provide full, complete, and adequate relief to appellants. Therefore, the lower court properly transferred those claims to the law side of the court.

In conclusion, we find that the absence of any material issue of fact regarding appellants' knowledge of the prior agreement amply supports the lower court's grant of summary judgment. We further find that the lower court did not abuse its discretion by characterizing appellants' claims against Fiore as claims for damages and thus transferring them to the law side of the court. Accordingly, we affirm the lower court.

Judgment affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, J., files a concurring and dissenting opinion in which CERCONE, J., joins.

SPAETH, Judge, concurring and dissenting:

I concur in the result reached by the majority opinion in that it decides against appellants. However, instead of affirming the order of the lower court, I should quash the appeals.

The lower court held that Long John Silver's was entitled to specific performance by Fiore. Fiore did not except to that order, nor appeal from it. Accordingly, Fiore must convey the land to Long John Silver's.

Neither Aletto nor Lesko has standing to object to this conveyance, for neither has any interest in the land. Aletto did have an interest once, by virtue of the March 19, 1973, agreement between Fiore and him, but that interest was terminated by the November 18, 1974, release. Lesko never got an interest, for he did not sign his lease with Fiore until November 18, 1974; by that time, Fiore had, by the agreement of June 12, 1974, sold the land to Long John Silver's.

Another way to state the point is this: Suppose, upon entertaining Aletto's and Lesko's appeals, this court were to decide in their favor, and order Fiore to convey to them. The result would be an impasse, for the lower court has by a final, unappealed from, order, ordered Fiore to convey to Long John Silver's. The possibility of such an impasse demonstrates the error of our entertaining Aletto's and Lesko's appeals. As the majority recognizes, "Once the lower court . . . granted Long John Silver's motion for summary judgment, it extinguished any claim [Aletto and Lesko] might have in the disputed property . . . ." Majority Opinion at 196. Upon Fiore's failure to appeal the lower court's order, this extinguishment of Aletto's and Lesko's claims *to the property* became final. We should therefore not review the claims.

As regards Aletto's and Lesko's claims against Fiore *for damages* : These claims have been transferred by the lower court from the equity side to the law side, and remain to be litigated. There being no final adjudication yet, we have at the moment nothing to do with them.

The appeals should be quashed.

CERCONE, J., joins in this opinion.