## Otero v. Department of Public Welfare

694

*David A. Searles*, for plaintiff.
*Oliver G. Upshur*, for defendants.

WILSON, *J.*, August 14, 1978—This action arises in equity court, with plaintiff, Angel M. Otero, seeking an injunctive relief from defendants, Department of Public Welfare, City of Philadelphia, Joseph Wnukowski, in his official capacity as Commissioner of Welfare, and the City of Philadelphia, and Irvin Rosen, in his official capacity as Supervisor of the Fiscal Office, Philadelphia Department of Public Welfare, as to their monthly appropriation of plaintiff's social security benefits and seeking a return of all moneys appropriated. Shortly after the filing of the complaint, the petition

for a special injunction became moot when defendants stopped taking the funds of plaintiff. The question before the court is whether the social security benefits appropriated by defendants, totalling $546, should be returned to plaintiff.

Plaintiff, Angel M. Otero, is a minor, who was 17 years of age at the time that this action began. Born August 23, 1958, he was abandoned by his mother at birth, to be placed in the custody of his grandmother and legal guardian, Josefina Oquendo. In 1960, plaintiff's father died, making plaintiff eligible for surviorship benefits under the Social Security Act. The funds received from the United States Treasury were paid to Mrs. Oquendo as his representative payee by the Social Security Administration. She used the funds received solely for plaintiff's needs and support.

On May 13, 1975, plaintiff was incarcerated at St. Gabriel's Hall in Phoenixville, Pa., as a result of a juvenile delinquency proceeding. St. Gabriel's is an institution maintained by funds received from the Philadelphia Department of Public Welfare. At no time during the juvenile delinquency proceedings did the court make a finding or an order that plaintiff, or his grandmother, was able to pay all or a part of the cost and expenses of maintaining plaintiff at St. Gabriel's Hall. Neither did plaintiff ever receive any notice or hearing from the Department of Public Welfare that it was going to appropriate the Social Security benefits to maintain him. Admitted into evidence was a letter, dated September 29, 1975, from the Social Security Administration, informing Mrs. Oquendo, who speaks only Spanish, that the social security benefits for Angel Otero would be paid to the Philadelphia Department of

Public Welfare, for the Department of Public Welfare had replaced her as representative payee. From that point on the funds were sent to the Department of Public Welfare. Neither Mrs. Oquendo nor Angel had been notified of the change until after it had occurred, and they were not given an opportunity by the Department of Public Welfare to contest the replacement. Plaintiff's benefits were received by the Department of Public Welfare from October, 1975, until his release from St. Gabriel's in February, 1976. The Department of Public Welfare received funds for that period totalling $546. It is the contention of plaintiff that those funds were used by defendant to reimburse itself for the cost of maintaining St. Gabriel's. The money was not given to Angel and was not placed into an interest bearing account for his future use: 20 C.F.R. §404.1605.

Mrs. Oquendo, during Angel's incarceration, was forced to satisfy the needs of Angel. She expended over $160 to supply him with clothes, shoes and spending money to compensate for the lack of needs supplied by St. Gabriel's Hall. When Angel asked the supervisor at St. Gabriel's about his social security checks, he responded that they had no knowledge of his receiving any checks; and when he asked for additional necessities, they implied that he should ask his grandmother for them. It is also believed by this court that when Mrs. Oquendo asked the supervisor of Angel about what she should do about the checks not being sent to her, he replied that she should do nothing.

This case was originally brought in equity to enjoin defendant's appropriation of plaintiff's funds. Later, plaintiff was released from St. Gabriel's and it was arranged with the Department of Public Wel-

fare and Social Security Administration to send the checks to Mrs. Oquendo. As a result of the funds being forwarded to plaintiff instead of defendant as they had been, the injunctive relief sought has become moot.

Defendant has two major contentions that fall short of being true issues for consideration. The first contention is that this court lacks equitable jurisdiction because there is an adequate remedy at law under the Social Security Act. The second contention of defendant is that this court lacks jurisdiction over the subject matter because plaintiffs must first exhaust their administrative remedies before seeking judicial intervention, and also, after that, the exclusive jursidiction over appeals of the decision of the Secretary of the Social Security Administration is rested in the United States District Court.

Both contentions of defendant would have some credence if plaintiffs were before this court of equity litigating against the decision of the Secretary of Social Security Administration making the Department of Public Welfare the representative payee, but that is not the case.

The issue is not whether the Social Security Administration could determine Department of Public Welfare as the representative payee, but the propriety of the Department of Public Welfare's applying for and accepting the Social Security Administration check in light of the Act of December 6, 1972, P.L. 1464, 11 P.S. §50.333(b),* which was

---

*11 P.S. §50.333. Repealed. Act of July 9, 1976, P.L. 846, sec. 5, eff. Jan. 1, 1978. It is important to note that defendant disclaims the applicability of this statute. They have in no way given any reasons for which this statute should not apply to the

the statute in effect at the time of Angel's incarceration. There is no question as to this court's jurisdiction over the subject matter. Plaintiff came to equity court for injunctive relief from the Department of Public Welfare's appropriating the social security benefits. This court had already assumed jurisdiction over the *subject matter* when the injunctive relief sought became moot. It is entirely within this court's latitude to determine all the issues brought before it once it has obtained jurisdiction: T. P. McGovern v. Spear, 463 Pa. 269, 344 A. 2d 826 (1975); Wortex Mills v. Textile Workers Union of America, 380 Pa. 3, 11, 109 A. 2d 815 (1954); Solomon v. Cedar Acres East, Inc., 455 Pa. 496, 317 A. 2d 283, 285 (1974); Ackerman v. North Huntingdon Township, 437 Pa. 49, 261 A. 2d 670 (1970).

The purpose of 62 P.S. §704.1(e) is to protect the property rights of the parent and those legally obligated to care for and support the child while being incarcerated. It is not necessary to question whether those same property rights should be extended to plaintiff. As plaintiff, by receiving the financial support of the Social Security Administration, has become "legally obligated" to care for and support himself with the assistance of a representative payee, it is required by the due process standards that plaintiff receive notice and hearing, as required by the United States Constitution and

instant case. They merely infer that the substance of the statute is no longer valid. This court notes that the portion of 11 P.S. §50.333 pertinent to this case has been included in the Act of June 13, 1967, P.L. 31, as amended, 62 P.S. §704.1(e) almost verbatim. Any reference to this statute, 11 P.S. §50.333, shall hereinafter be included in the reference to 62 P.S. §704.1(e).

the Pennsylvania Constitution. "Due process is as much required by the state constitution as by the fourteenth amendment and, as we understand it, is, for circumstances such as are now presented, defined in the same terms." Philadelphia Gas Works v. Philadelphia, 331 Pa. 321, 1 A. 2d 156 (1938).

The only requirement for the Department of Public Welfare was for it to afford plaintiff a hearing as to plaintiff's ability or those legally obligated to contribute to his maintenance. This requirement was explicitly stated in its own enabling statutes. The requirement is: "If, after due *notice* to the parents or other persons legally obligated to care for and support the child, and after affording them an opportunity to be *heard*, the court finds that they are financially able to pay all or part of the costs and expenses . . . the court may order them to pay the same." 62 P.S. §704.1(e).

It was proper for the Department of Public Welfare to establish itself as the representative payee to preserve the funds of plaintiff, Angel Otero. The impropriety of their actions came when the Department of Public Welfare used those same funds to reimburse itself for plaintiff's maintenance without providing for the necessary due process requirement contained in 62 P.S. §704.1(e).

## ORDER

And now, August 14, 1978, the court finds that the Department of Public Welfare appropriated the funds of plaintiff, Angel Otero, without following the standard set in 62 P.S. §704.1(e). It is hereby ordered and decreed that judgment be entered for plaintiff in the amount of $546, with interest.