## New York Life Insurance Company v. Sekula et al., Appellants.

Argued May 22, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*B. V. O'Hare,* with him *F. F. O'Hare,* for appellants.

*George H. Kaercher,* with him *Paul Bedford* and *Bedford, Waller, Jones & Darling,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 29, 1945:

These are appeals from the refusal to open a decree *pro confesso* entered for want of an appearance. The plaintiff insurance company, on June 1, 1942, filed its bill against Harry Sekula, Rose Wiercioch, also known as Rose Miernicki, and Helen Wiercioch, also known as Helen Yadusky, averring the issue on May 27, 1941, of a policy of insurance on the life of Harry Sekula, naming his sons John and Frank Sekula beneficiaries; that the beneficiaries were changed to Rose Miernicki and Helen Yadusky in fraudulent circumstances averred to be ". . . at and before the time when the said original application was sent to Plaintiff, as above set forth, all of the Defendants herein entered into a fraudulent conspiracy and plan whereby the said Defendants, Rose Wiercioch and Helen Wiercioch, were to secure the said insurance by furnishing the moneys for payment of the necessary premiums thereon, and by causing the Defendant, Harry Sekula, to make application for such policy, and whereby the Defendants, Rose Wiercioch and Helen Wiercioch, were to have complete possession and control of the said policy at all times and were to receive all benefits thereunder and were to be made beneficiaries therein after the said policy had been issued,

and whereby the Defendant Harry Sekula was never to furnish any money whatsoever for the payment of premiums and was never to have possession or control of said policy nor to receive any benefits whatsoever thereunder; and whereby the said John and Frank Sekula, sons of insured, were never intended to be beneficiaries, their names being used fraudulently in order to secure the said policy as hereinabove set forth, and their names being, in fact, John and Walter." The bill prayed for a decree cancelling the policy and averred plaintiff's willingness to repay the premiums collected with interest. It will be observed that the policy had only been in effect a year when the bill was filed.

The question is whether the bill was properly taken *pro confesso* for failure to enter an appearance and final decree thereon duly entered. The bill, which was filed on June 1, 1942, was served on defendants on June 4, 1942. They did not appear as required. On June 22, 1942, no appearance having been made, the plaintiff entered an order that the bill be taken *pro confesso* under Equity Rule 50. Defendants entered an appearance on June 29, 1942, and filed an answer on July 2, 1942, which was after plaintiff's order to take the bill *pro confesso*. Thereafter, on December 14, 1942, in accordance with Equity Rule 51, the chancellor, pursuant to plaintiff's order, entered a final decree in plaintiff's favor. Defendants presented a petition on December 22, 1942, and a rule was granted upon the plaintiff to show cause why the decree should not be opened. An answer was filed by plaintiff and depositions were taken. On June 19, 1944, the rule was discharged. No exceptions were taken to the final decree entered December 14, 1942, until June 28, 1944. From the dismissal of the exceptions and the entry of an amended final decree on October 30, 1944, these appeals were taken.

The conclusion is insuperable that the decree was properly entered for failure to enter an appearance. Equity Rule 28 provides: ". . . each bill shall require

him [the defendant] to enter an appearance within fifteen days after service. . . ." This requirement is reiterated in the form of the notice required to be affixed to the bill, set forth in Equity Rule 33, which further provides that an answer must be made within thirty days after service and states: "If you [defendant] fail in either respect, the bill may be taken *pro confesso,* and a decree made against you in your absence." Rule 50 similarly provides: "If no appearance is entered, or answer filed and served as required by these rules; plaintiff may enter an order, as of course, that the bill be taken *pro confesso.* . . ."

Defendants contend that the provisions requiring an appearance within fifteen days are not mandatory. They attempt to find support for this theory in Equity Rule 30, which states: "Within said fifteen days after service, defendant *may* enter in the prothonotary's office an appearance, in writing, specifying a name and address. . . ." (italics added). This contention is without merit. Rule 30 merely stipulates what defendants' attorney shall do on entering an appearance. See cases cited in Campbell's Annotations to Equity Rule 28. It does not modify Rules 28 and 33, specifically *requiring* defendant to enter an appearance within fifteen days after service. The time limitations on entering an appearance and making an answer must *both* be met. To hold otherwise, as defendants contend, would reduce the provisions for entering an appearance to a nullity, since a defendant could always avoid them by merely filing an answer. It is thus apparent that the order for the decree *pro confesso* was properly filed by the appellee. See cases cited in 8 Standard Pa. Practice page 223.

The chancellor thereafter entered a decree in plaintiff's favor, proceeding under Equity Rule 51, which states: "When a bill is taken *pro confesso,* the facts therein stated shall be presumed to be true, and the court shall proceed *ex parte* to enter the appropriate final decree. . . ." The decree thus entered on Decem-

ber 14, 1942, was entitled "FINAL DECREE", but inadvertently (as the chancellor states in his opinion) contained the word "nisi" in its body. Appellants now contend that the decree *pro confesso* was a decree nisi. This is a mistake. Equity Rule 51, supra, clearly provides that the court shall enter a "final decree". This requirement is mandatory: *Solar E. Co. v. Brookville Boro.*, 300 Pa. 21, 150 A. 92; *Rich Hill Coal Company v. Bashore*, 334 Pa. 449, 7 A. 2d 302; *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 306, 32 A. 2d 227; 8 Standard Pa. Practice, pages 226, 227. Furthermore, if the decree be regarded as a decree *nisi*, the present appeal would certainly not lie therefrom. In any event, appellants recognized the decree as final by filing a petition to open it and therefore were not misled.

The remaining contention is that the court below erred in declining to open the decree so regularly entered. Under Equity Rule 51, a decree *pro confesso* may be opened only "upon cause shown". Appellants must show that they were acting in good faith and that the delay in asserting the defense which they now seek to assert was not due to their own fault or wilful neglect: *Mitchell v. Mitchell*, 338 Pa. 152, 12 A. 2d 16. See also: *Verstine v. Yeaney*, 210 Pa. 109, 59 A. 689; *United Nat. Gas Co. v. James Bros. L. Co.*, 325 Pa. 469, 191 A. 12; *Kurtz v. Farrell*, 44 Pa. Superior Ct. 355.

In their petition to open the decree defendants averred that they had consulted an attorney; that he assured them that an appearance and answer would be filed in due time; that he failed so to do and seven days after the order to take the bill *pro confesso* was filed withdrew from the case, whereupon they employed another attorney who entered an appearance and filed an answer. The depositions taken to support the petition utterly fail to sustain these averments. There is no evidence that the defendants consulted or retained counsel; two of the defendants testified, but no other witnesses were produced to corroborate them; their testi-

mony, feeble as it is, is largely hearsay. Mrs. Miernicki said she "spoke to [her] husband and he went up to the attorney, his brother". This witness was not present and did not and could not know whether the attorney was in fact consulted or retained. This attorney, she said, "was suppose[d] to take care of everything." She said she received a letter from the attorney declining the case, but she did not produce the letter. Mrs. Yadusky, the other witness, was allowed to say that the lawyer, Mr. Miernicki, "came down to the house and they talked this case over, and then within a few days he had sent a letter saying he couldn't take the case, that he thought it would be best if an outsider would have the case because he was in the family, and he asked us to get another lawyer." But it is noteworthey that the lawyer Miernicki was not called to testify. Mrs. Yadusky failed to disclose in what respect the attorney neglected the case. There was no evidence that the attorney's letter came too late to prevent defendants from engaging another attorney in time to enter an appearance. At the time the depositions were taken, counsel for petitioners reserved the right to place this letter upon the record. It has never been produced. We agree with the court below that "The failure to offer [the letter] is ground for the conclusion that if it were offered, the date would show that the petitioners were given ample time to procure other counsel after the withdrawal of the first counsel and that steps might have been taken to prevent the plaintiff from the entering of the order for decree pro confesso."

It may thus be seen that none of the averments concerning neglect of counsel was sustained by the depositions. This is therefore not a case where a lawyer failed in his duty. Compare: *Pinsky v. Master*, 343 Pa. 451, 23 A. 2d 727. The harm in this case was caused by the defendants' failure to act diligently. It is true that relief from decrees *pro confesso* may be granted where a

reasonable excuse is offered, but here there was none. We agree that no abuse of discretion appears.

It may also be noted that although the refusal of the court below to open the decree *pro confesso* is assigned as error, no argument is made in appellants' brief that the court was not fully justified in its action. The sole reason *now* urged for opening the decree is that no appearance was necessary, which contention is, as we have previously pointed out, completely without merit.

Decree affirmed at appellants' cost.

---

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

This is a curious—one might almost say an extraordinary case. The bill in equity was filed June 1, 1942; service was made on defendants June 4; an order for a decree pro confesso because of defendants' failure to enter an appearance was filed by plaintiff, without further warning, on June 22, at which time the appearance was but *three days overdue;* an appearance was subsequently entered by defendants on June 29, and an answer was filed by them on July 2, which was within the 30 days allowed by the equity rules. Thus their only shortcoming was in the slightly delayed entry of an appearance, and defendants may well say, as did Othello to the signiors of Venice:

> "The very head and front of my offending
> Hath this extent, no more."

Following this practically negligible default, which worked no harm to plaintiff and could not have caused it the slightest inconvenience, a decree pro confesso was not entered until December 14, 1942, which was *almost six months* after defendants had entered their appearance and *more than five months* after they had filed their answer. Defendants promptly filed a petition and obtained a rule to have the decree pro confesso opened. Plaintiff filed an answer, depositions were taken, and on June 19,

1944, *a year and a half after the filing of the petition,* the court discharged the rule. Defendants filed exceptions to the decree, which the court had mistakenly labelled a decree "nisi", and thereupon *another four months* elapsed before the court acted on these exceptions and entered what it designated as an "amended final decree". The case was then appealed to our court. We therefore have this absurd situation,—that *more than three years* have now gone by since these proceedings were started, and there has not yet been the slightest approach to a determination of the real issue between the parties,—that issue being the simple question whether defendants had an insurable interest in this insurance policy and whether they or the insured had been paying the premiums; I do not think it an exaggeration to say that these questions could probably have been determined as the result of an hour's inquiry into the facts. And thus, whereas defendants' original default for which they are now to be penalized was merely one of a few days in the entry of a formal appearance, all this wasted time of three years has elapsed.

I think that most members of the bar will agree that the practice of taking snap judgments at law, or orders for decrees pro confesso in equity, for want of an appearance, is, happily, practically obsolete, and that it is the filing of the affidavit of defense or the answer to a bill in equity that is of importance, not the preliminary entry of an appearance.

I dissent in this case because I regard the refusal of the court below to open the decree pro confesso as wholly inexcusable. Certainly equity should be less technical than the law, especially in its procedure, and yet even at law our new rules of civil procedure provide that they shall be liberally construed and that errors and defects may be disregarded if no substantial rights of the parties are affected.* I cannot agree with the statement in the

---

* Pa. R. C. P. No. 126, 332 Pa. LXVII.

majority opinion that the depositions failed to sustain the averments of defendants' petition. Their evidence showed that immediately upon being served with the bill they placed the case in the hands of an attorney who was the brother-in-law of one of them and who was "supposed to take care of everything", but later he retired because he thought it better for them to get an outside lawyer. This they promptly did, and their new attorney thereupon entered an appearance, but, as already stated, the order for judgment pro confesso had been filed just a few days before. The majority opinion impresses me as being unduly critical with regard to defendants' testimony; it is obvious that they are not sophisticated litigants, nor is this a situation in which a party is attempting to set aside a deed or to obtain some similar relief where "clear, precise and indubitable" evidence is required. It was said in *Pinsky v. Master,* 343 Pa. 451, 452, 23 A. 2d 727, 728: *"It has been long a custom in Pennsylvania to grant relief from a judgment entered by default where the failure is due to a mistake or oversight of counsel and where application is promptly made and a reasonable excuse for the default offered";* (citing cases). Why is that "custom" now being departed from? Why is this case less meritorious than those which abound throughout the reports and in which that "custom" was followed? As early as *Brandle v. Jones,* 2 Woodward 7, a judgment by default was opened where the defendant's attorney had forgotten to file an affidavit of defense, the court saying: "The party himself is in no default. He employed counsel in ample time, and it would be harsh to punish him for the neglect of an officer of the Court." It seems to me extremely severe, and wholly contrary to precedent, to deprive these women of their day in court merely because the counsel on whom they depended did not file an appearance during the two weeks in which he was considering whether or not he would represent them in the litigation. I consider the action of the court below in refusing to open the decree

pro confesso a gross abuse of discretion, and as being of the type which deservedly tends to bring the law into disrepute, for, to repeat, we are here putting our stamp of approval on a record of three *years* of delay occasioned by an original three *days* of default on the part of a lawyer, and in so doing are, on a sheer technicality, depriving defendants of an asserted property right without the semblance of a hearing.

Mr. Chief Justice MAXEY concurs in this opinion. Mr. Justice DREW joins in this dissent.