457 A.2d 944

**Ann Marie VORHAUER, a minor by Charles and Doris Vorhauer, her parents and natural guardians, Appellants,**

**v.**

**Leon M. MILLER and Marie A. Miller, his wife.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1982.

Filed March 4, 1983.

---

Gary Francis Divito, Philadelphia, for appellants.

Gregory F. Mondjack, Philadelphia, for appellees.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an Order of the Court of Common Pleas of Bucks County denying plaintiffs-appellants' Petition to Vacate Judgment of Non Pros. Appellants contend that the lower court's failure to vacate the Judgment of Non Pros constituted an abuse of discretion. We disagree and, accordingly, affirm.

The appellants filed a two-count Complaint in Trespass on June 13, 1977 seeking judgment against the defendants-appellees in an amount in excess of $10,000.00 in each count. The Complaint alleged, *inter alia*, that:

"6. On or about June 22, 1975, at approxiamately [sic] 6:35 p.m., ... [two] dogs ... kept by the defendants, attacked the Minor Plaintiff [—Anne Marie Vorhauer—] who was seated upon her pony 'Pumpkin' and [was] lawfully upon [her] premises ..., causing the said pony to bolt, and drag the minor Plaintiff through a field. 7. As a result of the aforesaid attack, the Minor Plaintiff was thrown from her pony and dragged along the ground through a field, sustaining severe injuries.

\* \* \* \* \* \*

10. As a result of the negligence of the defendants, the Minor Plaintiff suffered severe traumatic injury to her

left eye, her head, and face; and to her arms, legs, and various other parts of her body, all of which are or may be permanent and continuing."

On September 7, 1977, the appellees served a set of interrogatories on the appellants—Anne Marie Vorhauer's consisted of 11 questions; Doris and Charles Vorhauer each received a duplicate list of 41 questions. However, because of appellants' counsel's failure to respond to the aforementioned interrogatories, the appellees, pursuant to Pa.R. Civ.P. 4006, secured an Order of Court, dated February 24, 1978, directing appellants to file written answers on or before March 27, 1978 or be subject to sanctions. In compliance therewith, appellants' counsel filed answers on March 6, 1978. The scenario continues with counsel for the appellees serving Charles and Doris Vorhauer with a Notice of Oral Deposition on May 4, 1978. Thereafter, on August 15, 1978, appellants' counsel reciprocated by having a similar notice served on the appellees, Leon and Marie Miller.

As a result of the depositions taken, appellees, on November 29, 1978, served a second set of interrogatories on Anne Marie Vorhauer and her parents, which consisted of 56 questions and requested that written answers be submitted "within twenty (20) days of their service[.]" As before, the appellees had to seek the imprimatur of a court Order, dated January 22, 1979, which "directed and ordered [appellants] to file written Answers to Interrogatories with [ ] ... defendants[-appellees] on or before Feb. 20, 1979, or be subject to ... sanctions[.]" On this occasion, appellants again did not comply with the time requirements, even though appellees' counsel granted them a 7-day extension. When the appellants finally did respond on March 7, 1979, appellees were less than satisfied and characterized "the ... Answers to ... [the] Interrogatories [as] so grossly inadequate and incomplete it [was] as if they had never been answered at all." (*See* Appellees' "Petition For Rule to Show Cause Why Appropriate Sanctions Should Not Be Imposed, ...," Point 9) In an attempt to remedy the situation, appellees obtained a Rule To Show Cause why

appropriate sanctions should not be imposed, including the possibility of a Judgment of Non Pros, or, in the alternative, why appellants should not be made to more specifically answer appellees interrogatories. The Rule was issued on March 28, 1979 and made returnable by April 16, 1979. Appellants did respond to the Rule To Show Cause; however, as with the two previous court Orders directing the filing of more specific answers or risk the imposition of sanctions, appellants' "Answer To Defendants' Motion For Sanctions" was not only filed *after* the due date, i.e., April 18, 1979, but constituted no more than an admission to all of appellees' interrogatories save No. 9, which was denied and labelled as "oppressive and designed to cause Plaintiffs excessive and unnecessary annoyance." [1] In response to the aforesaid, appellees took action on June 6, 1979 by filing a Memorandum of Law seeking sanctions in the nature of a Judgment of Non Pros or, in the alternative, a more specific answer to their interrogatories.[2] For the *fourth* time, the court entered an Order, dated August 3, 1979, directing appellants, in particular Anne Marie Vorhauer, "to file more specific answers to Interrogatories Nos. 19, 22, 23, 25, 26, 27, 31, 51, 52 within twenty (20) days from [the] date hereof or suffer Judgment of Non Pros." Counsel for appellants does not deny having received the aforementioned Order.

When counsel for appellants failed to file more specific answers, counsel for the appellees, in accordance with the notice requirements of Pa.R.Civ.P. 236,[3] filed a Praecipe

---

**1.** To be more specific, appellants admitted only Nos. 2 through 8 of appellees' interrogatories, which dealt with matters concerning the pony "bolting" and the circumstances surrounding appellees' dogs allegedly attacking and chasing the pony. The appellees sought, for example, more specificity to the interrogatories numbered: 4, 10–19, 22–26, 42, 51, 52 and 56. None of the aforementioned was answered to the appellees' satisfaction, and the court agreed, as is evidenced by the numerous orders issued directing appellants to elaborate upon their answers.

**2.** It is to be noted that in the interim (April 18, 1979), appellants submitted interrogatories, 9 in number, to the appellees, which were answered in a timely fashion (April 24, 1979).

**3.** Rule 236 provides in relevant part:

with the Prothonotary of the Court of Common Pleas of Bucks County on August 24, 1979, and asked that he:

"Kindly enter a Judgment of Non Pros against Plaintiffs and in favor of defendants Leon M. Miller and Marie A. Miller, for Plaintiffs' failure to file Answers to Defendants' Interrogatories in accordance with the Judge's Order dated August 3, 1979.

> WEBER AND ABARBANEL
> BY: /s/ Lawrence Pauker
> Lawrence Pauker, Esquire
> Attorney for Defendants
> Attorney I.D. # 24652."

On August 27, 1979, counsel for appellants received notice that a Judgment of Non Pros had been entered against his clients on August 24. On August 28, appellants' counsel submitted a "Petition To Vacate Judgment [Of] Non Pros," in which he alleged:

"4. Minor Plaintiff's failure to comply with the Court's Order was solely the result of her counsel's failure to act upon the Order.

5. Counsel's failure to comply with the Order may be reasonably explained. Counsel was out of the country from August 10, 1979 until August 20, 1979. Upon his

**Rule 236. Notice by Prothonotary of Entry of Order, Decree or Judgment**

(a) The prothonotary shall immediately give written notice by ordinary mail of the entry of any order, decree or judgment;

(1) When a judgment by confession is entered, to the defendant at the address stated in the certificate of residence filed by the plaintiff together with a copy of all documents filed with the prothonotary in support of the confession of judgment. The plaintiff shall provide the prothonotary with the required notice and documents for mailing and a properly stamped and addressed envelope; and

(2) In all other cases, to each party who has appeared in the action or to the party's attorney of record.

(b) The prothonotary shall note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents.

(c) Failure to give the notice or to mail the required documents, or both, shall not affect the lien of the judgment.

It is to be noted that Pa.R.Civ.P. 237.1, dealing with giving notice prior to entry of a default judgment, did not become effective until *after* the Judgment of Non Pros was issued in this case.

return, counsel was advised by another client that settlement on the sale of a $495,000.00, fifty-two unit apartment complex was to take place on August 24, 1979, and that a mortgage and note would have to be prepared; the complete terms thereof would have to be worked out with the buyer's attorney; and an existing second mortgage, in favor of a third party, would have to be satisfied. Regretably, [sic] the press of the matter, together with the correspondence and messages which had accumulated during counsel's absence, drew counsel's attention from the matter of preparing and filing the answers in accordance with the Court's Order.

6. The proposed answers are annexed hereto, and cure Minor Plaintiff's 'default'.

\* \* \* \* \* \*

8. The Minor Plaintiff has a good and just cause of action. This matter arises out of a Complaint in Trespass filed on behalf of the Minor Plaintiff seeking money damages for severe and permanent damage to her eyesight as a result of an attack by Defendants' dogs, and other injuries.[4]

\* \* \* \* \* \*

10. If the petition is denied and the non pros allowed to stand, the Minor Plaintiff will be deprived of her day in Court, and will forever lose all hope of recompense for the serious injuries which she has sustained."

After the submission of Memoranda of Law by counsel for both sides, the court issued an Order dated October 15, 1981 denying appellants' Petition. *See* Pa.R.Civ.P. 4005 & 4019. This appeal followed. We affirm.

■ In order for the Vorhauers to prevail on their petition to open ("vacate") the Judgment below, they had to establish the necessary criteria for the opening of a Judgment of Non Pros, which are that: 1) the petition must be timely

---

**4.** In a trespass action, a meritorious defense need not in all cases be shown to exist when the equities are otherwise clear. *See Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144 (1971); *Spilove v. Cross Transportation,* 223 Pa.Super. 143, 297 A.2d 155 (1972).

filed; 2) the reason for the default must be reasonably explained or excused; and 3) the facts constituting grounds for the cause of action must be alleged. *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Goldstein v. Graduate Hospital*, 441 Pa. 179, 272 A.2d 472 (1971); *Thorn v. Clearfield Borough*, 420 Pa. 584, 218 A.2d 298 (1966); *St. Vladimir Ukrainian Orthodox Church v. Preferred Risk Mutual Insurance Co.*, 239 Pa.Super. 492, 362 A.2d 1052 (1976). The only issue controverted below was whether the default was reasonably explained or excused.

Counsel for the appellants offers a three-fold explanation for his failure to act in a timely fashion in responding to appellees' interrogatories. First, counsel was out of the country for ten out of the twenty days in which he had to file the more specific answers. Second, upon his return, he was required to negotiate and prepare a mortgage and related documents for the sale of a 52-unit apartment complex. Third, he was "distracted by the press of his accumulated correspondence."

Counsel concedes, as he must, that mere inadvertence or the lack of diligence on the part of an attorney is not in and of itself the best reason for opening a judgment. Nonetheless, he urges that the facts peculiar to his case constitute a reasonable explanation for his delay. Moreover, he laments that "attorneys are humans, prone to error, whose frailities [sic] should not be visited upon their clients depriving them of their right to have their case tested by a trier of fact ...." (Appellants' Brief at 6) Although we empathize with counsel, we do not attribute a talismanic quality to the importuning that clients should not be held accountable for their counsel's (in)action. "To hold otherwise, as [appellants' counsel] contend[s], would reduce the provisions for entering a [default judgment] to a nullity, since ... [counsel] could always avoid [it] by merely ...." arguing justice would not be served by penalizing clients for their attorney's conduct. *New York Life Insurance Co. v. Sekula*, 352 Pa. 495, 498, 43 A.2d 134, 136 (1945). We do not take

our role as an appellate court lightly, and this is no more evident than in the instant type of case, for "[i]n no sort of case is closer attention to the facts required than in a case arising on petition to open judgment." *Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 119, 446 A.2d 257, 258 (1982).

Counsel for appellants would have us look at the fact that appellees obtained the Judgment of Non Pros *one day after* the 20-day time limit for the filing of the answers to the interrogatories came due. Viewed in isolation, such conduct could be interpreted, and rightly so, as the entry of a "snap judgment," which the courts of this Commonwealth have consistently deplored. *See, e.g., Queen City Electrical Supply Co. v. Soltis Electric Co.*, 491 Pa. 354, 421 A.2d 174 (1980); *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971); *Mahler v. Emrick*, 300 Pa.Super. 244, 446 A.2d 321 (1982) (citing cases). However, appellants' argument does not withstand the light of scrutiny when the facts are viewed in concert.

 To start with, counsel for appellants offers his own "inadvertence" as the "reasonable excuse" justifying the petition to open judgment. On this point, our Supreme Court has stated:

"It has been long a custom in Pennsylvania to grant relief from a judgment entered by default where the failure is due to a mistake or oversight of counsel and where application is promptly made and *a reasonable excuse for the default offered. Fuel City Mfg. Co. v. Waynesburg Products Corp.*, 268 Pa. 441, 445, 112 A. 145; *National Finance Corp. v. Bergdoll*, 300 Pa. 540, 151 A. 12; *Horning v. David*, 137 Pa.Super. 252, 8 A.2d 729. Assuming, arguendo, that the court below had the power to relieve plaintiff from the default, and also assuming that the failure was chargeable to counsel alone, *the fact remains that the relief sought was by way of grace and not of right.* It follows that we may not reverse the court below unless there was a clear abuse of legal discretion.

The court below predicated its refusal to grant the relief on the grounds that the application was not made with reasonable promptness, *that the rules have been in force for a considerable time, and that counsel had failed to heed the warning given in two decisions by courts of common pleas in Philadelphia County.* This was a matter peculiarly for the court below and we find nothing in the record showing an abuse of legal discretion by that court." (Emphasis added) *Pinsky v. Master,* 343 Pa. 451, 453, 23 A.2d 727, 728 (1942). *Accord Texas and Block House Fish and Game Club v. Bonnell Run Hunting and Fishing Corp.,* 388 Pa. 198, 130 A.2d 508 (1957).

This Court, likewise, has adhered to such a rule and has remarked:

"that mere confusion, *see Triolo v. Philadelphia Coca Cola Bottling Co.,* 440 Pa. 164, 270 A.2d 620 (1970), bald allegations of inadvertence of counsel, *Goldstein v. Graduate Hosp.,* supra; *Carrozza v. Girard Chevrolet Co.,* 200 Pa.Super. 502, 190 A.2d 577 (1963), mistake or inadvertence of counsel (without more), *see Westinghouse Credit Corp. v. Wenzel,* 223 Pa.Super. 87, 289 A.2d 759 (1972); *Spilove v. Cross Transp., Inc.,* 223 Pa.Super. 143, 297 A.2d 155 (1972), or demands on the time of counsel, *see Goldstein v. Graduate Hosp.,* supra; *Walters v. Harleysville Mut. Cas. Co.,* 417 Pa. 438, 207 A.2d 852 (1965); *Seltzer v. Ashton Hall Nursing & Convalescent Home,* 221 Pa.Super. 127, 289 A.2d 207, allocatur refused, 221 Pa.Super. *xliii* (1972), are not patently reasonable excuses and that *failure* to open based upon these explanations is not an abuse of discretion." (Emphasis in original) *St. Vladimir Ukrainian Orthodox Church v. Preferred Risk Mutual Insurance Co., supra,* 239 Pa.Super. at 501–502, 362 A.2d at 1058.

Stated differently, " '[w]hile it is true that a mistake or inadvertence of counsel will often justify the opening of a default judgment entered against a defendant [or a plaintiff], *a reasonable excuse for the default must be of-*

*fered.'"* (Citations omitted) (Emphasis added) *Horan v. R.S. Cook & Associates, Inc.,* 287 Pa.Super. 265, 268–69, 430 A.2d 278, 279 (1981). "In connection therewith, we have held that although defendant's [or plaintiff's] counsel may be involved in other matters, the existence of these obligations provides no excuse for opening the judgment *even though the client may be severely prejudiced. Walters v. Harleysville Mutual Cas. Co.,* 417 Pa. 438, 207 A.2d 852 (1965)." (Emphasis in original) *Goldstein v. Graduate Hospital, supra,* 441 Pa. at 182–183, 272 A.2d at 474. Accordingly, the inadvertence or mistake of counsel, without more, will not excuse appellants' failure to answer interrogatories. *Spilove v. Cross Transportation, Inc.,* 223 Pa.Super. 143, 297 A.2d 155 (1972); *Westinghouse Credit Corp. v. Wenzel,* 223 Pa.Super. 87, 289 A.2d 759 (1972); *see also Nardulli v. John Carlo, Inc.,* 274 Pa.Super. 34, 417 A.2d 1238 (1979) (failure to answer was based on a misunderstanding between counsel as distinguished from mere inadvertence or negligence, and, thus, lower court abused its discretion in refusing to open the judgment); *King v. Fayette Aviation,* 226 Pa.Super. 588, 323 A.2d 286 (1974) (burdens of litigation not reasonable excuse).

██ Instantly, from the time the Complaint in Trespass was filed in June of 1977, appellees' counsel has had to resort, repeatedly, to the use of court orders to expedite the disposition of preliminary matters so as to move the case to trial. The last of these, the August 3, 1979 Order directing appellants to file more specific answers within 20 days thereof or suffer Judgment of Non Pros, was admittedly received by counsel for appellants on August 7, 1979. (Appellants' Brief at 2) Thus, we are dealing with one who knew the implications of failing to act within the prescribed time. *See Bethlehem Apparatus Co. v. H.N. Crowder, Jr., Co.,* 242 Pa.Super. 451, 364 A.2d 358 (1976); *Telles v. Rose-Tex, Inc.,* 233 Pa.Super. 181, 335 A.2d 440 (1975). Appellants' counsel, knowledgeable of the consequences that would flow from the failure to comply with such a directive, proceeded to leave the country from August 10 to

August 20, 1979. However, even with 3 days remaining, counsel took no action to forestall the running of the 20-day period. Even given counsel's contention that he was inundated with other legal matters that could not be cleared up in time, he refrained from requesting an extension from the court or opposing counsel. *See St. Joe Paper Co. v. Marc Box Co.*, 260 Pa.Super. 515, 520–21, 394 A.2d 1045, 1048 (1978) (when counsel realized that their 'misunderstanding' would not be cleared up in time, they should have requested another extension to toll the running of the applicable time period and prevent the entry of a default judgment); *King v. Fayette Aviation, supra* (if counsel was so pressed for time it would have been a simple matter for him to have asked for another extension of time or have another attorney in his law firm prepare an answer). Rather, it was not until three days after the Judgment of Non Pros had been issued and five days after the 20-day time period had expired that counsel filed the requested answers to the interrogatories, along with the petition to open judgment. We find, based on the particular facts of this case, that appellants' counsel did not satisfactorily explain his failure to file a timely answer to appellees' interrogatories.

As so aptly stated by the lower court:

"In the instant case, the appellants' counsel's excuse amounts to little more than a hectic schedule. This is insufficient to 'reasonably explain' his failure to comply with our order. The appellants' counsel gives no reason why he did not ask for an extension of the time period within which he was required to reply. Nor did he notify the defendant of his difficulties. *See Boyles* [*v. Sullivan*, 230 Pa.Super. 453, 326 A.2d 440 (1974) ].

It is significant that this is not the only deadline missed by the appellant[s]. As we have already indicated in our recitation of the facts, the history of this case is replete with delay caused by the failure of plaintiffs' [appellants'] counsel to promptly respond to discovery requests. It is the responsibility of the plaintiffs to move the case forward. Defendants, as well as plaintiffs, are 'entitled to

have the controversy between them promptly adjudicated while witnesses are still available and memories are undimmed by long intervening years.' *Riley v. Boynton Coal Co.,* 305 Pa. 364, 157 A. 794 (1931).

In light of the history of delay in this case caused by the appellants and the nature of their excuse for failure to comply with our order, we conclude that they have not reasonably explained their failure to answer interrogatories as ordered by this court. It is for these reasons that the appellants' petition to vacate the [J]udgment of [N]on [P]ros was dismissed." (Lower Court Opinion at 5–6)

We have reviewed the record and conclude that the facts of this case adequately support the ruling of the court below.

Order affirmed.