589 A.2d 246

Ronald A. CONSUL and Beth Ann Consul, H/W

v.

Bernard BURKE, M.D., Isaac Tam, M.D., Rugby Laboratories, Inc., Chelsea Laboratories and Marshall Pharmacal Corporation

v.

Arthur D. HODESS, M.D. and M. Price Margolies Associates, Additional Defendants.

Appeal of Bernard BURKE, M.D. and Isaac Tam, M.D.

Superior Court of Pennsylvania.

Argued Oct. 16, 1990.

Filed April 3, 1991.

Thomas O. Malcolm, West Chester, for appellants.

Jerome Ornsteen, Bala Cynwyd, for Hodess & Margolies Associates, appellees.

Before DEL SOLE, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This case involves an appeal from the December 27, 1989, order granting the preliminary objections of the additional defendants (Arthur D. Hodess, M.D., and M. Price Margolies Associates) to their joinder in a malpractice suit by the original defendants/appellants (Bernard Burke, M.D., and Isaac Tam, M.D.).[1] We affirm.

The procedural history of this case begins with the filing of a six-count complaint on February 29, 1988, by Ronald A. Consul and Beth Ann Consul, his wife, against Drs. Burke and Tam (on grounds of medical malpractice) and Rugby,

---

1. This order is final. *Cf. Chiricos v. Forest Lake Council, Boy Scouts of America,* 391 Pa.Super. 491, 505–07, 571 A.2d 474, 480 (1990).

Inc., Chelsea Laboratories, Inc. and Marshall Pharmacal Corp. (on grounds of product liability) for prescribing, distributing and manufacturing, respectively, Prednisone.

It was alleged that in November and December of 1984, Mr. Consul came into the care of Drs. Burke and Tam for the treatment of chest and joint discomfort. Both physicians prescribed Prednisone, which Mr. Consul alleged was the direct and proximate cause of injury to his person (aseptic necrosis) necessitating various medical procedures (bilateral hip replacement) to address his injury, pain and loss of finances and life's pleasures. Thereafter, numerous pleadings were filed by the parties up to and including the August 11, 1988, responses of the Consuls to Chelsea's interrogatories at number 12, wherein it was listed for the first time that one of the doctors who had "rendered services" to Mr. Consul, "with respect to the injuries and conditions that [were] the basis of th[e] law suit ...," was Arthur B. Hodess, M.D.

Also, Dr. Burke's answer to Chelsea's interrogatories at number 12, submitted on April 20, 1988, indicated that after December 14, 1984, "A request for transfer of records to Dr. Margolis [sic] and group was obtained", and no further care was provided by Drs. Burke and Tam to Mr. Consul. Further, on November 18, 1988, the Consuls' responses to Drs. Burke and Tam's interrogatories at number 4 disclosed, again, that Doctor Arthur B. Hodess was one of several doctors who had examined, treated and rendered services to Mr. Consul because of his claimed injuries. However, to interrogatory number 27, which read: "Did any physician other than Dr. Tam or Dr. Burke prescribe or dispense any steriod [sic] or Prednisone for husband-plaintiff prior to or subsequent to November 1, 1984?" the answer typed was: "No."

On December 5, 1988, counsel for Drs. Burke and Tam (Attorney Michael D. Carr, of the law firm of Malcolm & Riley, P.C.) withdrew his appearance and Attorney Thomas O. Malcolm (of the same firm) entered his representation for the appellants. By February 16, 1989, Attorney Mal-

colm had filed a petition seeking an extension of time to join as additional defendants Arthur B. Hodess, M.D. and M. Price Margolies Associates. It was granted on April 3, 1989, without prejudice to the additional defendants' right to object timely.

In the petition filed to obtain an extension to join additional defendants, Drs. Burke and Tam alleged, in pertinent part, that after December 4, 1984, Mr. Consul engaged Dr. Arthur D. Hodess, a physician specializing in internal medicine, cardiology and critical care medicine, to treat him. After seeing Dr. Hodess on or about December 10, 1984, Mr. Consul continued to see him and was "prescribed Prednisone" by the doctor.

Joinder was being sought by the original defendants to assert a right to contribution from the additional defendants "for prescribing Prednisone for Ronald A. Consul[.]" Paragraph 14. In a complaint attached to the joinder petition, the original defendants claimed that Dr. Hodess had prescribed a continuing course of treatment with Prednisone from December 10, 1984, until February 7, 1985. Paragraph 9; see also Memorandum of Law of original defendants.

In their Memorandum of Law, the original defendants averred that to grant the petition to join would not delay the case, given that it was in its initial stages and only interrogatories and records had been exchanged. Further, the denial of the petition would prejudice the defense of the original defendants and require that they file a separate action against the additional defendants for contribution. *Id.* at page 7.

On July 28, 1989, the additional defendants filed preliminary objections to the original defendants' complaint on the ground that no "good cause" was shown for the delay in joining Dr. Hodess in violation of the 60–day time period under Pa.R.Civ.P. 2253 following the filing of the original complaint. The additional defendants argued that the original defendants were aware of Dr. Hodess' involvement in the case by August 11, 1988, when the plaintiffs responded

to Chelsea's interrogatories. The original defendants waited seven months after such a notice and one year after the filing of the original complaint to petition for joinder of Dr. Hodess. Paragraph 5.

The original defendants filed an Answer to Preliminary Objections of Additional Defendants responding that by August 11, 1988, the plaintiffs' answers to Chelsea's interrogatories named Dr. Hodess as having "rendered services to" Mr. Consul. It was admitted that the word "Prednisone" appeared twice in the Brandywine Hospital Discharge Summary Sheet which the plaintiffs produced on or about August 11, 1988, in response to the request for the production of records by Chelsea. However, the original defendants averred that it was not known whether these materials, filed in response to discovery of another party defendant, were examined closely by the then attorney for the original defendants. *Id.* at pages 2–3.

Present counsel for the original defendants claimed that the first he learned of sufficient information to determine whether Dr. Hodess should be joined was "after receiving plaintiffs' answer to the interrogatories that his office had filed upon them. . . ." At that time, *i.e.,* after November 18, 1988, present counsel for the original defendants asserted that he came to the conclusion that there was a basis to join Dr. Hodess and his professional association. *Id.* at page 3.

In a Memorandum in Opposition to Preliminary Objections of Additional Defendants, the original defendants' present counsel averred that the original defendants' prior counsel withdrew from the case on November 30, 1988; in particular, it was noted that:

[Attorney Carr gave notice of withdrawing from Malcolm & Riley in mid-November of 1988 (Same time Plaintiffs' Answer to Interrogatories filed by Attorney Carr for Drs. Burke and Tam were received)]. Mr. Carr had a number of cases that had to be reassigned to the remaining attorneys in the firm. This entailed reviewing the cases and making decisions regarding their reassignment. *When they were reassigned, successor counsel had to*

*find time, amongst the other demands of his or her practice,* to review each file which had been reassigned to him.

... the *Consul* case was reassigned to Thomas O. Malcolm, Esquire, who, *when he was able,* reviewed the materials that had been received from various sources. When he completed this review, [counsel concluded to seek joinder of Hodess and Associates].

*Id.* at pages 8–9 (Emphasis added).

By order of court dated December 27, 1989, the additional defendants' preliminary objections were granted and the third–party complaint of Drs. Burke and Tam was stricken. In an opinion accompanying the order, the court held that no "reasonable justification" was shown to grant the joinder petition and the inadvertence of counsel was not sufficient to justify the delay in seeking joinder of the additional defendants. This timely appeal followed and raises but a single issue, appearing at page 3 of the appellants' brief under the caption "Statement of the Questions Involved":

Whether the Trial Court abused its discretion in granting the Preliminary Objections of the appellees/additional defendants and striking the Complaint of the Appellants against them?

The basis for the appellants' contention is that: (1) the delay was justified; and (2) neither the plaintiffs nor the additional defendants would be prejudiced by the delay in effectuating joinder.

The applicable statutory law governing late joinder, as well as the standard of review, was set forth by this Court in *Riccobono v. Keystone Helicopter Corp.*, 352 Pa.Super. 186, 189–190, 507 A.2d 834, 835–836 (1986):

Pennsylvania Rule of Civil Procedure 2253 prohibits the filing of a praecipe or complaint to join an additional defendant more than sixty days after the original defendant is served with plaintiff's initial pleading. Rule 2253 permits an untimely filing only upon cause shown.... Unless appellant demonstrated cause to justify the un-

timely filing, the trial court had no choice but to deny the motions to join *nunc pro tunc.*

Joinder after the sixty day period may provide a method of expeditiously litigating dispute involving many parties provided the plaintiff is not subject to unreasonable delay. [citation omitted]. To justify late joinder, the petitioner defendant must show,

(1) some reasonable justification or excuse for the delay; (2) a statement of the facts alleged to render the proposed additional defendant alone liable, or liable with, or liable over to defendant, or liable to the defendant on a proper cross claim; *and* (3) allegations that the late joinder will not be prejudicial to the proposed additional defendant. It should ask for leave to file both the praecipe and the complaint called for by Rule 2252(b). [citations omitted].

Whether cause is shown to justify late joinder is a matter for the sound discretion of the trial court, and we shall not reverse absent an abuse of discretion. [citation omitted].

We find it necessary to decide only whether the appellants have proffered sufficient justification in delaying to seek joinder of the additional defendants some seven months *after* learning that Dr. Hodess had "continued" to prescribe Prednisone to Mr. Consul. See *Kovalesky v. Ester Williams Swimming Pools*, 345 Pa.Super. 95, 497 A.2d 661, 665 n. 4 (1985). The appellants admit as much in their brief to us; to-wit:

... the appellants knew from the discovery obtained by Chelsea that Dr. Hodess had continued [Mr. Consul] on Prednisone after he took over his care, ... they deferred the decision [to join] awaiting responses to the discovery they had filed upon the plaintiffs.

Brief at 8. The appellants had information as early as August 11, 1988, which, using their own words, "indicated that the additional defendants had also prescribed Prednisone to Mr. Consul...." *Id.* at 14. They urge that, despite possession of the answers to interrogatories identifying Dr.

Hodess as continuing to prescribe Prednisone to the plaintiff-Consul, "they should not be faulted for wanting to have as much information on this subject as they could reasonably hope to obtain before coming to their decision regarding the joinder [of Dr. Hodess and M. Price Margolies Associates]." *Id.* at 15.

The question, premised on the appellants' posture in the case, appears to be not when they should have sought to join the additional defendants, but, rather, "how much was enough information" warranting the submission of a request to seek joinder of Dr. Hodess and M. Price Margolies Associates. Ideally, one would like to possess the optimum amount of information before beginning any legal procedure in order to maximize success in the judicial arena. However, the appellants' argument falls under the weight of its own logic.

For example, the reality of the situation was that the original defendants had *sufficient* information by August 11, 1988, to put them on notice that other players (Dr. Hodess and M. Price Margolies Associates) participated in administering a drug claimed by the plaintiff-Consul to have had deleterious effects upon his person. This is evident from the fact that the original defendants had no more information when they filed the petition seeking to join the additional defendants on February 16, 1989, then they did on August 11, 1988. Present counsel for the appellants stated as much when he wrote that this seven-month hiatus (between the filing of the plaintiffs' answer to Chelsea's interrogatories on August 11, 1988, and the granting of the petition to extend time on February 16, 1989) so as to obtain answers to the original defendants' interrogatories to the plaintiffs, provided the original defendants with "no further information" than they possessed months previously. See Appellants' Brief at 14. Yet, they were reluctant to plead the joinder of Dr. Hodess and M. Price Margolies Associates on August 11, 1988, but they utilized the *same quantum of information* garnered from the plaintiffs' answers

to Chelsea's interrogatories of August 11, 1988, to buttress their petition to seek joinder seven months thereafter.

Our review of the record is not supportive of the appellants' protestation that it presented "good cause" to justify its delay in seeking joinder. To explicate: First, the appellants do not deny having knowledge of Dr. Hodess administering Prednisone to the plaintiff-Consul as early as August 11, 1988; Second, almost four months elapsed between August 11, 1988 and December 5, 1988, the latter date being when counsel, who had represented the appellants, *formally* severed his employment with the law firm representing the appellants—Malcolm & Riley, P.C., and no discovery action took place during this interim; and Third, it was not until almost two and one-half months had elapsed from the point in time of the appellants' prior counsel's withdrawal (November 30, 1988, until February 16, 1989, when petition for extension to join was filed) that present counsel submitted a petition seeking an extension of time to join the additional defendants.

We learn that this second lapse of almost ninety days was attributable to appellants' present counsel "ha[ving] to find time, amongst the other demands of his ... practice, to review ... [the] file which had been reassigned to him." See Appellants' Memorandum in Opposition to Preliminary Objections of Additional Defendants at page 8. Thus, it was only when present counsel "was able" to find time for this case that he decided to take action to seek joinder. *Id.* at 9.

We find that present counsel neglects to fill in the void between the time when he was reassigned the appellants' case in December of 1988 and his presentment of the petition seeking an extension to join additional defendants on February 16, 1989, with reason(s) justifying his conduct. The mere press of a workload does not excuse inaction. *Cf. Vorhauer v. Miller,* 311 Pa.Super. 395, 457 A.2d 944 (1983) (an attorney being inundated with work is not, in and of itself, a reasonable excuse justifying the opening of a default judgment). Additionally, counsel for the appellants

has failed to submit "good cause" for prior counsel's failure to act to discover what role Dr. Hodess played in the treatment received by the plaintiff-Consul upon learning of the same via Chelsea's interrogatories, and the answers thereto, of August 11, 1988. *See Edmonds v. MBB, Inc.,* 384 Pa.Super. 584, 559 A.2d 590, 594 (1989); *Riccobono,* supra; *Kovalesky,* supra; *see also Moore v. Howard P. Foley Co.,* 235 Pa.Super. 310, 318, 340 A.2d 519, 522 (1975) (inadvertence of counsel is not sufficient justification for delaying in joining an additional defendant).

Albeit we are cognizant that the procedural rules should be construed so as to avoid a multiplicity of suits, the onus is upon the *original defendants* to justify their delay in joining the proposed additional defendants. Presently, we conclude that the appellants fell short of the mark in failing to satisfy their burden of demonstrating sufficient cause to allow the unseasonable joinder. *See Kovalesky,* supra. "Although we seek to avoid a multiplicity of suits, the procedural rules have been promulgated for a purpose and should not be ignored. Parties should not be encouraged to disregard time limitations in favor of relying upon the grace of the court." *Id.,* 345 Pa.Superior Ct. at 108, 497 A.2d at 668. No reasonable excuse has been presented to circumvent the sixty-day time-frame set forth in Pa.R.Civ.P. 2253 to allow the late joinder of additional defendants by the appellants.[2]

Order affirmed.

DEL SOLE, J. files a Dissenting Opinion.

**2.** We would mention that the appellants also complain that failure to allow it to join Dr. Hodess and M. Price Margolies Associates will necessitate the filing of a separate complaint against the additional defendants for contribution or indemnity. Thus, delaying the appellants' ability to join the additional defendants is prejudicial to them. "This claim is plainly not ripe for review as there is no order before this Court which has attempted to construe the order on appeal in the manner which appellant[s] suggest[ ].... Only on appeal from such an order would we be properly called upon to reach that issue." *Glabbatz v. Terminal Freight Handling,* 386 Pa.Super. 447, 563 A.2d 151, 153 (1989).

DEL SOLE, Judge, dissenting.

I must dissent from the Majority's decision to uphold the trial court's dismissal of additional defendants in this medical malpractice suit. I believe that in focussing on the reasonableness or justification for the delay in joining the additional defendants, we have lost sight of the general purpose of the rule and the objectives sought to be achieved in allowing unseasonable joinder of additional defendants "upon cause shown." Pa.R.C.P., No. 2253, 42 Pa.C.S.A.

In *Zakian v. Liljestrand*, 438 Pa. 249, 256, 264 A.2d 638, 641 (1970), the Supreme Court stated:

> The rule does not specify that is sufficient cause for an extension nor does it delineate the factors that the court should take into consideration when deliberating upon such a petition for extension. The court, therefore, should be guided by the objectives sought to be achieved by use of the additional defendant procedure, in conjunction with the purpose for which a 60–day limitation was placed on its unrestricted use. In a capsule, these rules are an attempt to provide a means to simplify and expedite the disposition of matters involving numerous parties [citation omitted], without subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation.

In other words, the reason for allowing joinder of additional defendants is to expedite the proceedings, and the reason for the 60–day limitation is to protect the original plaintiff from unreasonable and prejudicial delay. For instance, prejudice might arise from this delay if it resulted in postponing trial or requiring repetitious discovery to the plaintiffs' detriment. Therefore, the decision whether to allow unseasonable joinder should rest on an assessment of the effect joinder will have on the plaintiff's prosecution of the litigation, and whether joinder will result in the expeditious disposition of the matters in issue. In contrast, the objectives of efficiency and fairness to the plaintiff are not well served by this court's reliance on a three-part test which focuses on whether the reasons offered for late

joinder are reasonable. This test does not protect against abuses of Pennsylvania's liberal joinder policy. Rather, such protection is best guaranteed by focussing on the party who may be harmed by the late joinder of additional defendants.

The Majority did not determine whether the plaintiffs would be prejudiced by this joinder because they found that the defendants did not have "good cause" for the delay. Appellants assert that the joinder of these additional defendants will not postpone this matter from coming to trial in normal course and this is not disputed. They also assert that the joinder will not require that any discovery held to date be repeated. The proposed additional defendants have been represented at the deposition of the plaintiffs, the only depositions taken to date, and interrogatories and materials produced in requests for production have been provided to counsel.

I believe that the Majority's reliance on *Riccobono v. Keystone Helicopter Corp.*, 352 Pa.Super. 186, 507 A.2d 834 (1986) is misplaced. There, the appeal was from a denial by the trial court of a request to permit the joinder of additional defendants. In the case before us, the trial court had permitted the joinder. It was only after the additional defendants objected that the trial court dismissed them from the case. The focus of the court in joinder matters must depend on the status of the parties raising the issue. It is appropriate to examine the "cause" question when the objection to joinder is from other parties presently involved in the litigation. The trial court must be satisfied that the attempted joinder will not delay the ultimate resolution of the case. However, once the joinder has been permitted and it is the joined party objecting, the trial court's only concern should be that the joined party has not been prejudiced by the untimeliness. The cause for the lateness in joining is no longer a factor.

Moreover, it would be a waste of judicial resources to sustain the dismissal of these additional defendants. Although the statute of limitations has run on the plaintiffs'

direct cause of action against them, the original defendants would have a right of contribution or indemnity against the additional defendants. *Oviatt v. Automated Entrance System Co.*, 400 Pa.Super. 493, 583 A.2d 1223 (1990). To permit the enforcement of this right in this litigation would eliminate the need of a second trial on many of the same issues. As was mentioned above, the purpose of Pennsylvania's third party procedures is to avoid multiplicity of suits by adjudicating in one suit the rights and liabilities of all of the parties in the cause of action. *Martinelli v. Mulloy*, 223 Pa.Super. 130, 299 A.2d 19, 21 (1972). Joinder should be allowed to expedite the proceedings and conserve judicial resources.

In sum, I would find, consistent with the purposes of the Rule providing for late joinder of third parties, that the additional defendants, Dr. Hodess and Associates, should be joined in this proceeding.